216 N.J. Super. 421 (1987)
524 A.2d 410
RANDOLPH S. PUGH, PLAINTIFF-RESPONDENT,
v.
KATHY PUGH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 6, 1987.
Decided January 26, 1987.
*422 Before Judges PRESSLER, GAULKIN and BAIME.
Ann Bernice Segal, P.A., attorneys for defendant (Cheryl A. Bukala, on the brief).
No appearance on behalf of respondent.
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff and defendant entered into a property settlement agreement, thereafter incorporated into a divorce judgment, which provides:
19. The defendant shall have exclusive possession of the marital home. The said marital home shall be sold upon the occurrence of one of the following events, whichever event shall first occur:
a. The minor child, Stephen B. Pugh, graduates high school;
b. The defendant remarries;
c. The defendant lives with a non-related adult male.
*423 Seventeen months after the divorce, plaintiff moved to sell the marital home on the ground that defendant was then living with "a non-related adult male." Following a plenary hearing, the motion judge found "that there is a living together within the meaning of the property settlement agreement" and that plaintiff "is entitled to insist upon the sale of the former marital home." Defendant appeals from the order thereupon entered.
We have no difficulty in accepting the motion judge's findings of operative fact. He found that plaintiff had observed one or both of Gerald Parker's two vehicles at the marital home "whenever he has gone past the house or when he has picked up the children for visitation, be it late at night or early in the morning." Parker was also observed performing chores around the house, such as cutting the grass, and was seen late at night unloading band equipment from defendant's van.
Defendant acknowledged that Parker spends three out of four weekends of the month with her, usually bringing his daughter with him; she also said that on occasion Parker brings a change of clothing. The motion judge further found that Parker has his meals with defendant and her family when he is at the house and that he "showers at the home and also shaves at the home during the weekends that he is there." The proofs showed that "despite the fact that [Parker] eats his meals there and has the use of the facilities at least three nights  two or three nights a week, that other than having purchased the riding mower, he makes no other contributions."
The judge also reported his interview of the parties' son Stephen, then 14 years old. Stephen told the judge that "there was some clothes there, not much," that Parker "stays there nearly each weekend" and that he also "stays there on other occasions, as much as one night a week." While Parker would occasionally "miss that one night a week," there were other weeks "when he would be there for a longer period than one night."
*424 Based upon those proofs, the judge concluded that Parker "is there more than three weekends a month," that "there are occasions during the week when he is there as well and that "there is more than a casual relationship here."
While those factual findings are amply supported by the record, we are satisfied that they do not warrant the conclusion that defendant "lives with a non-related adult male" within the meaning of the property settlement agreement. To be sure, defendant and Parker spend substantial time together at the former marital home and it can be assumed that they enjoy a sexual relationship. But they are not continuously together, nor do they hold themselves out or conduct themselves as husband and wife. They have not established a single economic or domestic unit. Parker maintains a separate residence where he spends significant time and where he maintains custody of his own minor child. He keeps most of his clothing at his own residence. There is no suggestion that either defendant or Parker has assumed a parental role or responsibility with respect to the other's children. Excepting for the fact that Parker does some household chores and eats meals with defendant when he stays with her, there is no evidence that either he or defendant is financially contributing to or benefitting from the other. All of those facts point strongly toward a conclusion that defendant is not "living with" Parker. See, e.g., Beck v. Beck, 286 Ala. 692, 246 So.2d 420, 428 (1971); Littlefield v. Littlefield, 292 A.2d 204, 211 n. 3 (Me. 1972); Brown v. Brown, 122 Misc.2d 849, 472 N.Y.S.2d 550 (1984); Taylor v. Taylor, 11 Ohio App.3d 279, 465 N.E.2d 476, 477-478 (1983); Fuller v. Fuller, 10 Ohio App.3d 253, 461 N.E.2d 1348 (1983); In re Marriage of Vasconcellos, 58 Or. App. 390, 648 P.2d 1358 (1982); In re Marriage of Desler, 56 Or. App. 812, 643 P.2d 655 (1982); Weseman v. Weseman, 51 Or. App. 675, 626 P.2d 942, 944 rev. den. 291 Or. 118, 631 P.2d 341 (1981). Cf. Kaplan v. Kaplan, 186 Conn. 387, 441 A.2d 629 (1982).
*425 Whether this mix of facts should require the sale of the former marital home is a question of contract interpretation: namely, what did the parties intend to accomplish by including paragraph 19c in their agreement? Plaintiff testified that he "had strong religious objections to my wife residing with a nonrelated adult male," that he regarded it as "very possible" that his wife would do so "and that was the reason we included it in the divorce settlement." Defendant gave a quite different explanation:
My understanding at the time of the divorce and the only reason that I agreed to that section in the divorce hearing was the fact that I thought it meant that I would move a nonrelated male  that I would not marry him, move him into my home, live with him, be supported by him, and have him be a major factor in my children's lives which Gerald is not. And excuse me, that he would reside there night and day, 24 hours a day, get up and go to work from there, come home from work, and live in a situation as if we were man and wife.
The judge did not resolve this conflict in the testimony nor did he state any conclusions as to the meaning or intent of the contract language.
We are disinclined to apply the contract language in a way which conflicts with our stated public policy to guarantee individual privacy, autonomy, and the right to develop personal relationships. See Gayet v. Gayet, 92 N.J. 149, 151 (1983). The contract is ambiguous; it need not, and should not, be read to require the sale of the former marital residence simply because defendant has adopted a particular lifestyle. Read reasonably in light of our public policy, the agreement should be regarded as having principally an economic purpose, that is, to assure that plaintiff's interest in the former marital home is not used to subsidize defendant's relationship with a male cohabitant. As Gayet put it in a cognate setting, the test is whether "one cohabitant supports or subsidizes the other under circumstances sufficient to entitle the supporting spouse to relief." Id. at 153-154.
So tested, the facts found by the motion judge do not warrant the conclusion that defendant "lives with" Parker. There is no showing of support or subsidization or of any change in defendant's *426 economic needs or resources resulting from her relationship with Parker. Nor is there any showing that the relationship with Parker has in any other way materially affected defendant's use of or her need for the former marital home. Given those circumstances, we conclude that the property settlement agreement does not require the sale of the house at this time.
The February 13, 1986 order is reversed.