528 So.2d 1286 (1988)
Rosette HERRERO, Appellant,
v.
Luis A. HERRERO, Appellee.
No. 87-2941.
District Court of Appeal of Florida, Second District.
July 27, 1988.
*1287 Elihu H. Berman of Krug, Berman & Silverman, Clearwater, for appellant.
J. Bruce Harper of MacPherson, Harper, Kynes, Geller, Watson & Buford, Clearwater, for appellee.
DANAHY, Judge.
A former wife appeals from an order declaring that her ex-husband's obligation to pay alimony has terminated. We agree with the appellant that the trial judge erred in so ruling, and we reverse.
The marriage of the parties was dissolved by a final judgment entered July 29, 1981. That final judgment incorporated a stipulation and property settlement agreement between the parties. The agreement provided that the husband pay "for alimony and child support a unitary payment of unallocated $3,350.00 per month, until such time as the wife shall remarry, die, or live with another person in a conjugal relationship ... upon the happening of any such event, the said alimony and payment ... will be terminated."
The order before us for review is the product of a contempt proceeding initiated by the appellant on August 13, 1987, when she filed a motion for order of contempt alleging that the appellee had unilaterally decided that one of the conditions for termination of alimony had occurred  the appellant's living with another person in a conjugal relationship  and had cut off her alimony payments. The appellee filed a response, and a hearing was held at which evidence was presented by both parties. Thereafter the trial judge rendered his final order, declaring that the appellee's alimony obligation was terminated.
The issue here involves the appellant's relationship with a man named Schmidt. The appellant first met Schmidt at Christmas 1985 and the relationship lasted until August of 1987. During that time the appellant and Schmidt enjoyed an intimate relationship which progressed to the point where the appellant was spending every weekend on Schmidt's boat, and he was spending two or three nights a week at her home.
In his order, the trial judge specifically found that at no time did the appellant and Schmidt reside with each other. He further found that there was no evidence that either the appellant or Schmidt provided any support to the other. Despite these findings, and despite the trial judge's observation that there was no material dispute as to any of the facts, the trial judge concluded that, based on the totality of the evidence and considering the agreement between the parties, the appellant had in fact engaged in a conjugal relationship with another person; therefore, the appellee's obligation for the payment of alimony pursuant to the separation and property settlement agreement was declared terminated as of September 18, 1987.
In Kenyon v. Kenyon, 496 So.2d 839 (Fla. 2d DCA 1986), this court considered a separation agreement which provided that the alimony obligation of the husband would terminate if the wife permanently resided with a nonrelated adult male. In that case we observed that a separation agreement entered into by the parties and ratified by the trial court is a contract and should be construed and interpreted as such. We further noted that a standard of contract interpretation is to give the contract terms their plain meaning absent evidence of the parties' intent to give those terms a special meaning. As in Kenyon, there is no evidence in the record of this case that the parties intended to give the terms "live with another person in a conjugal relationship" any special meaning. Therefore, as in Kenyon, we give these terms their plain meaning consistent with Florida public policy.
The words "live with" may mean something less than full-time residence, *1288 and it may be that the appellant and Schmidt "lived with" each other for brief periods of time within the meaning of the property settlement agreement. Be that as it may, living with each other is not enough by the terms of the agreement. The agreement specifies "live with another person in a conjugal relationship." The word "conjugal" means of or belonging to marriage or the marriage state; thus the condition of the agreement is that the appellant live with another person in a relationship at least similar to the marriage relationship. That was simply not the case. As the appellant puts it, she and Schmidt shared their beds, but not their closets; not their dresser drawers; not their medicine cabinets. They spent weekends together, but they never merged their life courses. Never did either contribute to the support of the other.
The appellant has brought our attention to the decision in Pugh v. Pugh, 216 N.J. Super. 421, 524 A.2d 410 (1987). In passing, we note our agreement with the New Jersey court that contract terms of this genre should be regarded as having principally an economic purpose. They are not meant to penalize an alimony recipient on moral grounds for indulging in an intimate relationship. Such agreements are intended to relieve a payer of alimony from further obligation under circumstances where the recipient is supporting another or receiving support from another in a state of cohabitation appropriate to the marriage state.
In our view the trial judge misconstrued the legal effect of the evidence. Accordingly, we reverse.
RYDER, A.C.J., and FRANK, J., concur.