**Juan Jesus GABRIEL**

v.

**The STATE of Texas.**

**No. 05-91-01385-CR.**

Court of Appeals of Texas, Dallas.

Oct. 27, 1992.

Rehearing Denied Dec. 8, 1992.

Lawrence G. Boyd, Dallas, for appellant.

Suzanne Kirby Perkins, Dallas, for appellee.

Before ENOCH, C.J., and OVARD and KAPLAN, JJ.

## OPINION ON MOTION FOR REHEARING

ENOCH, Chief Justice.

We overrule the appellant's motion for rehearing. We withdraw our opinion of August 10, 1992. The following is now the opinion of this Court.

Juan Jesus Gabriel appeals his conviction in a jury trial of the offense of unlawful possession with intent to deliver cocaine, greater than 28 grams. In four points of error, Gabriel asserts that: (1) there was insufficient evidence to affirmatively link him to the contraband; (2) there was insufficient evidence to prove his intent to deliver; (3) there was insufficient evidence to show possession of cocaine in an amount greater than twenty-eight grams; and (4) the trial court erred in admitting opinion testimony about the presence of cocaine in untested bags of cocaine. We overrule his points and affirm the trial court's judgment.

## THE TRIAL TESTIMONY

Detective Bishop Spencer testified that he and several other officers of a tactical squad executed a narcotics search warrant on January 12, 1989, at 1811 South Boulevard, apartment 216. The door was barricaded with a wood block, and the officers had to slam the door with a slammer several times to gain entry. The apartment appeared to be used as a "trap house" or "crack house," a facility for selling illegal narcotics. A trap house is fortified so that once inside, a person cannot leave. It usually is barren of furniture. Two persons are usually stationed inside the premises—one acts as a lookout while the other sells the drugs. The police found Gabriel next to the only piece of furniture in the apartment, a dresser located in the living room.

Sergeant Cheritta Johnson testified that she was watching the bedroom window of apartment 216 during the execution of the search warrant. She saw a young male named Ramos attempting to jump out of the window. Another officer pulled Ramos back inside. Johnson went inside the apartment and saw fifty-four small ziplock

baggies, each containing two or three individual rocks of crack cocaine, and a loaded handgun in plain view on top of the dresser. Johnson performed a field test[1] to determine that the substance in the baggies was crack cocaine. Another loaded handgun was found in Ramos's waistband. Johnson frisked Gabriel for weapons. His clothes were not wet although it was raining outside. Johnson found three twenty dollar bills and four five dollar bills in Gabriel's pocket. Gabriel told her that the money did not belong to him. Johnson examined the entire apartment. It was empty except for some brown trash bags containing garbage found in the kitchen and the dresser containing some clothing in the living room.

Andrea Bunn, a forensic drug chemist at the Southwestern Institute of Forensic Sciences, testified that she analyzed the contents of one ziplock plastic bag using a spot test, mass spectrometry, and gas chromatography, and determined the contents to be 99% cocaine. Two other bags were spot tested and tested with gas chromatography and determined to contain 99% cocaine. She spot tested two additional bags and determined that they also contained cocaine. The total weight of the cocaine was 35.2 grams. The weight of the cocaine scientifically tested was 2.237 grams. Bunn testified that her visual inspection of the untested substance revealed that it was probably cocaine, although it was possible that it was not. The untested substance was packaged the same way in the same sized ziplock baggies as the tested drugs. The texture and coloring was the same. Bunn stated that she examined illegal drugs on a regular basis as part of her job.

Sergeant David McCoy testified that crack cocaine is commonly sold from crack houses fortified with barricades. A "rock" of crack cocaine weighs less than 1/10th of a gram and sells for ten dollars. A larger size rock sells for twenty dollars. McCoy examined the ziplock baggies confiscated from the January 12, 1989 search and testi-

fied that each baggie contained two to three ten dollar rocks.

Gabriel testified in his own behalf (through an interpreter) that he was employed at a temporary employment agency in 1989, but was not working on January 12. Gabriel was living across the street from Ramos at the time of his arrest. Ramos approached him to inquire about a radio Gabriel had for sale. Since he needed the money, Gabriel took the radio into Ramos's apartment to show it to Ramos. Gabriel did not have a gun. When he went inside Ramos's apartment, Gabriel saw the gun on the dresser but did not see any crack cocaine. Gabriel stated that he would rather die of starvation than earn money selling narcotics. Gabriel testified that when Ramos saw the police coming, Ramos barricaded the door and ran to the back of the apartment. Gabriel was standing by the door when the police gained entry. The police placed him against the door, frisked him, and made him lie face down on the floor. Gabriel testified that he did not have eighty dollars on his person. Gabriel said that he was not wet because it was not raining hard.

## AFFIRMATIVE LINKS TO THE CONTRABAND

In his first point of error, Gabriel contends that the evidence was insufficient to support his conviction because it failed to affirmatively link him to the contraband in a manner proving that he possessed it.

■ In determining the sufficiency of the evidence, this court's inquiry is limited to determining whether, evaluating the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Turner v. State*, 805 S.W.2d 423, 427 (Tex. Crim.App.), *cert. denied*, — U.S. —, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). If the State's evidence supports an inference other than a finding of the essential elements

---

**1.** A field test consists of placing a portion of a suspected narcotic into three vials containing chemicals. If the liquid in the vials turns pink on the top and blue at the bottom, it can be inconclusively presumed that the substance is cocaine. After the field test, the substance can be conclusively established as cocaine by testing in a forensic science laboratory.

of an offense, the trier of fact could not rationally find the accused guilty beyond a reasonable doubt. *Carlsen v. State,* 654 S.W.2d 444, 449–50 (Tex.Crim.App.1983) (op. on reh'g).[2] This does not mean that if some of the evidence at trial suggests innocence, the jury cannot find a defendant guilty. *Castro v. State,* No. 835–90, slip op. at 3 (Tex.Crim.App. January 8, 1992). The jury, as trier of fact, is the sole judge of witnesses' credibility and is free to believe or reject all or any part of the testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984).

■ "A person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance...." TEX.HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 1992). To support a conviction for unlawful possession of a controlled substance, the State must prove (1) that the accused exercised care, control and management over the contraband; and (2) that the accused knew the substance was contraband. *Garcia v. State,* No. 683–90, 1992 WL 116312, slip op. at 7 (Tex.Crim.App. June 3, 1992); *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim. App.1988). Showing that a defendant was in the vicinity of contraband is not enough—the State must prove an affirmative link between the defendant and the contraband. *Smith v. State,* 737 S.W.2d 933, 941 (Tex.App.—Dallas 1987, pet. ref'd).

■ An affirmative link may be established by showing facts that indicate the accused's knowledge and control, such as that the contraband was located in plain view, that it was conveniently accessible to the accused, and the quantity of the contraband. *Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Crim.App. [Panel Op.] 1981). Here, fifty-four baggies of cocaine were found on top of the only piece of furniture in the apartment. Gabriel was found near the cocaine at the time of the arrest. Gabriel had eighty dollars in his pocket in bills consistent with the type of bills used to purchase baggies of crack cocaine. Officer Johnson testified that there was no radio found on the premises. This refutes Gabriel's testimony that he was on the premises to sell a radio. The jury was not obligated to accept as true Gabriel's version of the facts and it obviously did not do so. *See King v. State,* 710 S.W.2d 110, 114 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd), *cert. denied,* 484 U.S. 829, 108 S.Ct. 99, 98 L.Ed.2d 59 (1987).

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Gabriel exercised care, control and management over the contraband and that he knew the substance was contraband. The totality of the facts and circumstances are sufficient to affirmatively link Gabriel to the contraband in such a manner and to such an extent that a reasonable inference could be made. *Garcia,* No. 683–90, slip op. at 8 (Tex.Crim.App. June 3, 1992). We overrule Gabriel's first point of error.

## INTENT TO DELIVER

■ In his second point, Gabriel contends that the evidence was insufficient to prove that he intended to deliver a controlled substance.

■ Intent to deliver may be proved by circumstantial evidence, such as (1) the quantity of drug possessed, (2) the manner of packaging, (3) the presence of large amounts of money, (4) whether the defendant himself is a drug user, and (5) whether there is evidence of drug transactions. *Smith,* 737 S.W.2d at 941. Here fifty-four baggies of crack cocaine were found packaged in a manner intended for resale. Gabriel had eighty dollars in his pocket in bills consistent with the type of bills used to purchase cocaine. There was no evidence

---

**2.** Recently, the Court of Criminal Appeals overruled *Carlsen* and eliminated the reasonable hypothesis appellate construct for determining sufficiency of the evidence points. *Geesa v. State,* 820 S.W.2d 154, 160–61 (Tex.Crim.App.1991). The holding in *Geesa,* however, applies only to cases tried after November 6, 1991. *Id.* at 165. Since the trial in this case commenced on September 16, 1991, we are bound to use the reasonable hypothesis construct.

that Gabriel himself used or purchased the cocaine. Gabriel was found inside a "crack" or "trap" house, a facility used exclusively for the sale of drugs. *See Edwards v. State*, 813 S.W.2d 572, 578 (Tex. App.—Dallas 1991, pet. ref'd) (en banc) (describing a similar crack house).

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Gabriel intended to deliver a controlled substance. We overrule Gabriel's second point of error.

### QUANTITY OF THE CONTRABAND

In his third and fourth points, Gabriel asserts that the evidence is insufficient to support his conviction for the possession of cocaine in an amount greater than twenty-eight grams since only 2.237 grams contained in five of the fifty-four baggies of the cocaine was scientifically tested. Gabriel also contends that the trial court erred by allowing Andrea Bunn, the forensic drug chemist, to testify that the forty-nine untested baggies contained cocaine because her testimony was not based on scientifically reliable procedures.

"A person commits an aggravated offense if the person commits an offense under Subsection (a) and the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 28 grams or more." TEX.HEALTH & SAFETY CODE ANN. § 481.112(c) (Vernon 1992). "An offense under Subsection (c) is: (1) punishable by confinement ... for life or for a term of not more than 99 years or less than 5 years, and a fine not to exceed $50,000, if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 28 grams or more but less than 200 grams." TEX.HEALTH & SAFETY CODE ANN. § 481.112(d)(1) (Vernon 1992). In this case since Gabriel could be convicted of a lesser included offense for possessing an amount of drugs weighing less than 28 grams, the State had the burden of proving the weight of the cocaine beyond a reasonable doubt.

Our review of a Texas Court of Criminal Appeals case and cases from other jurisdictions indicates that it is proper to admit expert witness testimony regarding the quantity and nature of controlled substances based upon visual observation. In *McGlothlin v. State*, a quantity of amphetamine and water was contained in two distinct observable layers in a five-liter flask. 749 S.W.2d 856, 857 (Tex.Crim.App.1988). Appellant's expert witness testified that he visually observed the flask and determined the weight of amphetamine to be less than 400 grams. *Id.* at 857 & n. 2. The Court of Criminal Appeals held that the record *clearly* established that less than 400 grams of amphetamine was present in the flask, that the water and other inorganic substances present in the flask could not be considered "adulterants" or "dilutants" and, therefore, that the appellant was entitled to an acquittal of the offense of possession of amphetamine in an amount over 400 grams. *Id.* at 861.

In Illinois, the general rule is that a chemist need only test random samples in order to be qualified to give an expert opinion as to the whole amount seized. *People v. Hill*, 169 Ill.App.3d 901, 120 Ill. Dec. 574, 582, 524 N.E.2d 604, 612 *appeal denied*, 122 Ill.2d 585, 125 Ill.Dec. 228, 530 N.E.2d 256 (1988). In *People v. Kaludis*, the State proved beyond a reasonable doubt that the defendant possessed 100 tablets of methaqualone after random tests were conducted by a forensic chemist conclusively establishing presence of methaqualone and the chemist testified that the tablets all exhibited the same physical characteristics with respect to size, shape, color, and hardness and all of the tablets were marked "Lemmon 714." 146 Ill.App.3d 888, 100 Ill.Dec. 382, 384, 497 N.E.2d 360, 362 (1986). The court concluded that when substances are homogeneous in appearance, random sampling provides a sufficient basis for proving beyond a reasonable doubt that all of the material is a controlled substance. *Id.* 160 Ill.Dec. at 387, 497 N.E.2d at 365. The court also noted that an expert opinion about the entirety of material based upon random sampling goes

only to the weight of such evidence used by the jury to determine if in fact the material contains the controlled substance. *Id.*

The Florida courts have adopted the Illinois rule about random testing of suspected controlled substances. *Ross v. State*, 528 So.2d 1237, 1240 (Fla.Dist.Ct.App.), *review denied*, 537 So.2d 569 (Fla.1988). In *Ross*, the court stated that it is "a fair inference that ... similar-looking, commingled material is the same as the random positive sample taken therefrom." *Id.* In a Florida case similar to the instant case, a criminologist tested material contained in one of 139 small plastic bags of suspected rock cocaine. *Bond v. State*, 538 So.2d 499, 500 (Fla.Dist.Ct.App.1989) (per curiam). The court held that rocks of cocaine are like the pills in *People v. Kaludis*, and the random testing of one bag is appropriate to prove beyond a reasonable doubt the contents of all of the 139 bags. *See id.* at 499–500.

In this case, Bunn testified that five of fifty-four ziplock baggies were scientifically proven to contain cocaine. She visually inspected the untested baggies and noted that the substance inside appeared the same in color and texture as in the tested baggies. She also noted that all of the drugs were packaged in the same sized ziplock baggies. In her opinion based on having examined illegal drugs on a regular basis as part of her job as a forensic drug chemist, Bunn concluded that the remaining baggies also contained cocaine.[3]

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Gabriel possessed cocaine in an amount greater than twenty-eight grams. We also conclude that the trial court did not err by allowing the State's drug chemist to give her opinion as to the contents of untested material after a visual inspection. The tested and untested material was homogeneous in appearance and Bunn was

experienced in the field of examining and testing narcotics. Accordingly, we overrule Gabriel's third and fourth points.

We affirm the trial court's judgment.

Dissenting opinion by KAPLAN, J.

KAPLAN, Justice, dissenting.

I respectfully dissent. The issue in this case is whether the State can prove the quantity and nature of a controlled substance based on the random sampling of separate bags or containers and visual observation. In cases where the weight of the controlled substance is an essential element of the offense, I would require the State to scientifically test a random sample from each bag or container until the aggregate amount of controlled substance or a mixture thereof satisfies the requisite statutory weight.

Two jurisdictions have addressed this issue. In Illinois and Florida, the State is required to scientifically test the contents of each bag or container to prove that it contains a controlled substance. *People v. Hill*, 169 Ill.App.3d 901, 120 Ill.Dec. 574, 581, 524 N.E.2d 604, 611, *appeal denied*, 122 Ill.2d 585, 125 Ill.Dec. 228, 530 N.E.2d 256 (1988) (powder cocaine); *People v. Ayala*, 96 Ill.App.3d 880, 52 Ill.Dec. 446, 448, 422 N.E.2d 127, 129 (1981) (heroin); *People v. Games*, 94 Ill.App.3d 130, 49 Ill.Dec. 666, 667, 418 N.E.2d 520, 521 (1981) (cannabis); *Ross v. State*, 528 So.2d 1237, 1239 (Fla.Dist.Ct.App.), *review denied*, 537 So.2d 569 (Fla.1988) (powder cocaine). A chemist need only test random samples within each container to prove the make-up of the remainder of the substance in the container. *Hill*, 120 Ill.Dec. at 582, 524 N.E.2d at 612. However, the contents of a container not scientifically tested may not be considered in determining the severity of the offense. *Hill*, 120 Ill.Dec. at 582, 524 N.E.2d at 612; *Ayala*, 422 N.E.2d at 129; *Games*, 49 Ill.

---

**3.** Sergeant McCoy, an expert police officer in narcotics, also examined the fifty-four baggies and stated that they contained rock cocaine. This testimony was not objected to and also went to the weight of the evidence. Sergeant Johnson's testimony that she conducted a field test that inconclusively established that the material was cocaine also went to the weight of the evidence.

Dec. at 667, 418 N.E.2d at 521; *Ross*, 528 So.2d at 1240–41.

Two reasons have been advanced for this rule. First, some contraband substances look the same as legitimate compounds. *See Ross*, 528 So.2d at 1239. Second, the fact that one or two packets containing a controlled substance are found among other packets containing similar-looking material is no assurance that the untested packets also contain a controlled substance. *Id.*

The majority completely disregards this authority and focuses instead on two other cases. In *Bond v. State*, the issue was whether testing one of 139 separately wrapped rocks of cocaine was sufficient to sustain a conviction. 538 So.2d 499 (Fla. Dist.Ct.App.1989). The court, in a per curiam opinion, first recognized the rule that requires the random sampling of each separate bag in powder cocaine cases. *Id.* at 500. The court then summarily concluded that rock cocaine more closely resembles pills than powder, citing *Asmer v. State*, 416 So.2d 485 (Fla.Dist.Ct.App.1982). *Id.* The court reasoned that, because *Asmer* and *Ross* approve the random testing of commingled pills, the chemist was not required to test each rock of cocaine. *Id.*

I am not persuaded by *Bond*. First, *Asmer* nowhere suggests that crack cocaine more closely resembles pills than powder. Second, the rock cocaine in *Bond* was not commingled but separately packaged. While a similar-looking, commingled substance may in fact be homogeneous, the same inference cannot be drawn where similar-looking substances are separately packaged. *Ross*, 528 So.2d at 1240. To sustain the conviction based on the testing of only one out of 139 separately wrapped rocks is in direct conflict with all of the aforementioned authority.

The other case cited by the majority is distinguishable. In *People v. Kaludis*, the issue was whether random sampling was sufficient to sustain a conviction for pos-

session of 100 methaqualone tablets. 146 Ill.App.3d 888, 100 Ill.Dec. 382, 497 N.E.2d 360 (1986), *appeal denied*. A chemist testified that all of the tablets exhibited the same physical characteristics with respect to color, diameter, roundness, thickness, hardness, scoring, and bevelling. *Id.*, 100 Ill.Dec. at 384, 497 N.E.2d at 362. All were marked "Lemmon 714." The tablets had identical lettering and were manufactured on the same press with the same dies. *Id.*, 100 Ill.Dec. at 387, 497 N.E.2d at 365. Based on these facts, the court held that the random sampling of tablets exhibiting similar characteristics was sufficient to prove beyond a reasonable doubt that all the confiscated tablets contained the same controlled substance. *Id.*, 100 Ill.Dec. at 387–88, 497 N.E.2d at 365–66.

I find *Kaludis* to be factually distinguishable. First, it appears that all the tablets were contained in one package.[1] In that event, random sampling would be sufficient to prove the nature and quantity of the controlled substance. *Hill*, 120 Ill.Dec. at 582, 524 N.E.2d at 612. Additionally, the physical properties of rock cocaine and methaqualone tablets are not analogous. The chemist in this case testified that the substance in the untested bags was rock cocaine based on her visual observation that it was the same off-white color and hardness and was packaged the same way. In my opinion, this testimony more closely resembles the descriptions given in the powder cocaine and cannabis cases where the courts require the scientific testing of each bag or container. *Cf. Bond*, 538 So.2d at 500.

Finally, the majority relies on a Texas case to support its holding that an expert may testify regarding the quantity and nature of a controlled substance based upon visual observation. In *McGlothlin v. State*, 749 S.W.2d 856, 857 n. 2 (Tex.Crim. App.1988), a chemist testified about the quantity of amphetamine based solely on

---

1. The court distinguished *Ayala* and *Games*, cases in which drugs were found in more than one bag. *Id.*, 100 Ill.Dec. at 386, 497 N.E.2d at 364. Moreover, the chemist testified that "he had never experienced a situation where counterfeit tablets *came in one bag*, were found to be alike pursuant to a tablet ballistics test, and contained different controlled substances." *Id.*, 100 Ill.Dec. at 385, 497 N.E.2d at 363 (emphasis added). Although it is not clear from the opinion, it is reasonable to conclude that the tablets were retrieved from the same container.

an in-court visual observation. The court reversed the conviction because the State failed to prove that the defendant possessed the statutory amount of amphetamine. *Id.* at 861. The court did not address whether expert testimony as to the quantity and nature of a controlled substance based solely on visual observation is an acceptable method of scientific proof. *McGlothlin* is therefore inapposite.

In this case, only five of the 54 bags recovered by the police were scientifically tested and found to contain rock cocaine. The contents of the tested bags weighed 2.237 grams. I would hold that the State failed to prove beyond a reasonable doubt that appellant was in possession of greater than 28 grams of a controlled substance. TEX.HEALTH & SAFETY CODE ANN. § 481.-112(c) (Vernon 1992). I would grant appellant's motion for rehearing and reverse the trial court's judgment.