**Opinion issued August 22, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00291-CR

————————————

**CURLEY JAMES BOYKIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 185th District
Harris County, Texas
Trial Court Case No. 1319594

## MEMORANDUM OPINION

A jury found appellant, Curley James Boykin, guilty of the offense of

possession with intent to deliver a controlled substance, namely, cocaine, weighing

more than one gram and less than four grams.[1]  Pursuant to an agreement with the State, the trial court assessed his punishment at confinement for twenty-five years. In one issue, appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

## Background

Houston Police Department ("HPD") Narcotics Officer M. Zamora testified that he was been specially trained on the subject of how cocaine is bought and sold.  He explained that the street value for one gram of cocaine is $100 and crack cocaine is sold as "rocks" that weigh 0.1 to 0.2 grams and cost $10 to $20.  Most crack cocaine users carry only two to three rocks at one time because of the highly-addictive nature of the narcotic.  Zamora noted that, in his experience, crack cocaine users do whatever they can to earn some money and then purchase one crack cocaine rock and smoke it, often "on the spot."  Thus, it is uncommon for such a user to "walk around" with more crack cocaine rocks unless the person is selling them.

Officer Zamora further testified that early in September 2011, he conducted a "proactive investigation" at the address of 2710 Hardy Street for about one week, during which he "observed activity that was consistent with narcotics trafficking."

---

[1]    *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2010).

2

During all hours of the day, he saw several people arriving at the house on foot, in cars, and on bicycles. They went to the front door or were met at the front, and they then left quickly, with a level of traffic that is not "normal" for a family dwelling. Before executing a search warrant, Zamora also saw people, including appellant, "hanging out" outside of the house most of the times that he watched it. Zamora then met with a confidential informant, who purchased narcotics at the house, and he obtained and executed a search warrant at the house.

Officer Zamora explained that there is near Hardy Street, an area that has high-powered electric lines, and people will often jump a fence and run to the area to dispose of narcotics or guns because it is harder for police officers to find such contraband in the area. Thus, before executing the search warrant, HPD's "entry team" positioned a uniformed police officer on the other side of the fence behind 2710 Hardy Street.

The "raid team" arrived at the house at about 9:30 p.m. on September 9, 2011, and, when they pulled up in a van, Officer Zamora saw appellant and his wife, Lasonya White, run into the house, while two people stayed outside and stood with their hands up. Zamora and HPD Narcotics Officer J. Castro chased appellant and White as they ran inside the house. Zamora saw appellant and White run through the house and out a side door. White fell down and made a "soft toss"

of what Zamora believed to be crack cocaine rocks, and he found a crack cocaine rock about one-and-a-half feet away from White's hands where she fell.

Officer Zamora stated that Officer Castro, who saw appellant toss a white pill bottle over the fence near the power lines, took him into custody. Officer J. Annese, who was positioned on the other side of the fence, saw the bottle fly over the fence, and he turned it over to Zamora. Zamora noted that the bottle contained several crack cocaine rocks, which weighed a total of 6.5 grams, is "way more" than what is normally kept for personal use, and constitutes 30 to 65 "single servings." And Zamora noted that appellant, who had the keys to the suspect house, told Zamora to give the keys to "Mr. Gordon."

Officer Castro testified that he assisted in the surveillance of the house at 2710 Hardy Street and the execution of the search warrant on September 9, 2011. Castro noted that he saw appellant and White run into the house from the front yard when the HPD "raid van" stopped in front of the house. He chased appellant outside the house, toward the back of the driveway, and he saw appellant stop, throw a white pill bottle over the fence, and then immediately turn around and surrender. Castro testified that, based on his training and experience, it is common for people who possess narcotics to run away from police officers and often try to "get rid of" anything they have "on them." Castro took appellant to the front of the

4

house, and he heard someone announce on the radio that a bottle had come over the fence.

HPD Officer J. Annese testified that, during the execution of the search warrant, his job was to provide rear perimeter security behind the backyard fence. He positioned himself on the other side of the fence with another officer, and they waited for anyone that might try to run. After Officer Annese heard the raid team arrive, he heard the footsteps of someone running toward the fence, and he saw a white pill bottle "fly" over the fence as if it was lobbed with a "hook shot." Annese caught the bottle, which he gave to Officer Zamora.

HPD Criminologist J. Hamelius testified that she conducted a chemical spot test on the rock substance dropped by White and the rocks found in the white pill bottle. She also conducted a chromatography mass spectrometer or "GC-MS" analysis on the rocks. And Hamelius confirmed that the rock that White threw on the ground contained cocaine and weighed 0.0324 grams. She also confirmed that 15 of the rocks found in the white pill bottle contained cocaine and weighed a total of 5.2 grams.

**Standard of Review**

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond

5

a reasonable doubt. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). In doing so, we give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *See id.* We defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *See Williams*, 235 S.W.3d at 750.

## Sufficiency of the Evidence

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction because there is "no evidence that [he] had any intent to deliver the substance he allegedly possessed" and "[n]one of the factors normally attendant to dealing were present."

6

To prove possession with intent to deliver a controlled substance, the State must show that a defendant (1) exercised care, custody, control, or management over the controlled substance, (2) intended to deliver the controlled substance to another, and (3) knew that the substance in his possession was a controlled substance. TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(38), 481.112(a) (Vernon 2010), § 481.113(a) (Vernon Supp. 2012); *Parker v. State*, 192 S.W.3d 801, 804 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Intent to deliver a controlled substance may be established through circumstantial evidence, including evidence that the defendant possessed the contraband. *Mack v. State*, 859 S.W.2d 526, 528 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Courts have considered several factors in determining such intent, including the following: (1) the nature of the location at which the defendant was arrested; (2) the quantity of contraband in the defendant's possession; (3) the manner of packaging; (4) the presence, or lack thereof, of drug paraphernalia (for use or sale); (5) the defendant's possession of a large amount of cash; (6) the defendant's status as a narcotics user; and (7) evidence of narcotics transactions. *Williams v. State*, 902 S.W.2d 505, 507–08 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see also Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Gabriel v. State*, 842 S.W.2d 328, 331–32 (Tex. App.—Dallas 1992), *aff'd*, 900 S.W.2d 721 (Tex. Crim. App. 1995). The number

7

of factors present is not as important as the logical force the factors have in establishing the elements of the offense. *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). An oral expression of intent is not required, and "[i]ntent can be inferred from the acts, words, and conduct of the accused." *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). And the expert testimony of experienced law enforcement officers may be used to establish a defendant's intent to deliver a controlled substance. *See Mack*, 859 S.W.2d at 529.

Appellant argues that the factors used by courts in determining intent to deliver fail in this case because he was in a residential home, he possessed only 5.2 grams of cocaine, it was not packaged for sale, no paraphernalia was found for dealing or using the cocaine, no currency was found, and there is no evidence of narcotics use by appellant, although it was established that his wife was a narcotics user. As a result, appellant asserts that his connection to the cocaine found in the white bottle seized by Officer Annese is "mere speculation."

Officer Zamora testified that when the HPD raid van pulled up in front of appellant's house, appellant and White ran into the house and out through a side door. Zamora took White into custody after he saw her toss a crack cocaine rock. Officer Castro testified that he was behind Zamora and followed appellant into the backyard where he saw him throw a white pill bottle over the fence before he

8

turned around and surrendered. Officer Annese, who was positioned on the other side of the fence, testified that he saw a while pill bottle "fly" over the fence, and he caught the bottle and turned it over to Zamora. Zamora noted that the bottle contained 30 to 65 "single servings" of crack cocaine, with a total weight of 5.2 grams. Zamora and Castro explained that they had conducted surveillance of the house prior to executing the search warrant and had seen a large amount of traffic by pedestrians, motorists, and bicyclists, who would stop at the house, go to the front door, or be met at the front, and then quickly leave. Both described the amount of traffic as abnormal for a residence. The officers also testified that, in their training and experience, crack cocaine users only carry one to two rocks of crack cocaine at a time and use it immediately because the substance is so addicting. And he noted that the typical amount of crack cocaine for personal use is 0.1 or 0.2 grams. Zamora also testified that a confidential informant made a drug purchase at the house during the surveillance period.

Moreover, Officer Castro saw appellant throw the white pill bottle, which contained 5.2 grams of crack cocaine, over the fence at the location where much contraband is commonly abandoned. Officers found no paraphernalia for narcotics use in the house, and there is no evidence that appellant appeared to be under the influence of narcotics when he was arrested.

9

In support of his argument, appellant relies on *Garrett v. State*, 161 S.W.3d 664 (Tex. App.—Fort Worth 2005, pet. ref'd). In *Garrett*, during the execution of a search warrant, the defendant and a woman were seen attempting to flush cellophane baggies down a toilet. *Id*. at 667. Police officers recovered 9.4 grams of crack cocaine from the toilet and found United States currency and more baggies of crack cocaine in the possession of the woman. *Id.* Although the defendant was convicted of the offense of possession with intent to deliver a controlled substance, the court of appeals concluded that even though the evidence was sufficient to establish his possession, it was not sufficient to establish the defendant's intent to deliver. *Id. Garrett* is readily distinguishable from the instant case. Here, Officer Castro saw appellant in exclusive possession of the white pill bottle, which contained between 30 to 65 "single servings" of crack cocaine. Also, appellant had the keys to the suspect house and told Officer Zamora to whom he should give the keys to secure the house.

In a similar case, the Waco Court of Appeals held that there was legally sufficient evidence to support a defendant's conviction of possession with intent to deliver a controlled substance where the evidence showed that the defendant was seen tossing two plastic baggies toward a pool table in a bar right before he was tased by a police officer. *Brooks v. State*, No. 10-07-00309-CR, 2011 WL 540527, at *2, 4 (Tex. App.—Waco Feb. 16, 2011, pet. ref'd) (mem. op.) (not designated

10

for publication).  The baggies contained 3 grams of marijuana, 4.72 grams of crack cocaine, and six ecstasy tablets weighing 1.29 grams.  *Id*.  The defendant had only a small amount of cash in his possession, had no narcotics paraphernalia, and he did not appear to be under the influence of narcotics when he was arrested.  *Id*.

Thus, viewing all of the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have reasonably inferred that appellant possessed the crack cocaine in the white pill bottle with the intent to deliver it to another.  Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction of the offense of possession with the intent to deliver a controlled substance.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Brown, and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).