

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-14-00187-CR**
**NO. 02-14-00188-CR**

KENDELL NAJEE SIMINGTON                                                          APPELLANT

V.

THE STATE OF TEXAS                                                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NOS. 1327054D, 1327055D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Kendell Najee Simington of (i) possession with intent to deliver between 4 and 200 grams of cocaine and (ii) unlawful possession of a firearm by a felon, and it assessed his punishment at 30 years' confinement on the delivery charge and 10 years' confinement on the firearm

---

[1]*See* Tex. R. App. P. 47.4.

charge. In two points, Simington argues that the evidence is insufficient to support his conviction for both offenses. We will affirm.

## II. BACKGROUND

In May 2013, narcotics officers received information about possible drug activity at an apartment in Fort Worth. They began conducting surveillance on the apartment and discovered information that led them to believe that it was operating as a trap house. According to the officers, trap houses are generally used for the sole purpose of selling illegal drugs, and it is common for these places to lack any sign of actual habitation. While observing the apartment, officers frequently saw visitors arrive and go inside for "three or four minutes" and then leave. Believing that drugs were being sold out of the apartment, officers enlisted the help of a confidential informant to conduct two controlled buys at the apartment. On both occasions, the informant—who had been searched before going in—returned with narcotics. The informant also reported that there was a firearm inside the apartment and that the door was barricaded by two pieces of wood to prevent unaided entry.

Armed with this information, police obtained a "high risk" search warrant for the apartment and had it carried out by the SWAT team. The SWAT team took down the door with a battering ram and threw in a "flash bang" device to disorient anyone inside. The officers then entered the apartment and discovered two individuals—Simington and Delisha Bennett. Between them was a ceramic plate with several baggies of what was later determined to be cocaine. Also in the

2

room were strips of paper with a phone number, at least two digital scales, and $474 in mostly one- and five-dollar bills. There was a gun on the floor in front of Simington and $600 in small denominations inside his pocket.

### III. EVIDENTIARY SUFFICIENCY—POSSESSION

Simington argues in his first and second points that the evidence is insufficient to link him to the narcotics and to the gun that were found inside of the apartment.

#### A.    Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

#### B.    Possession with Intent to Deliver

To support Simington's conviction, the State had to prove that he knowingly or intentionally possessed between 4 and 200 grams of cocaine. *See* Tex. Health & Safety Code Ann. §§ 481.112(a), (d), 481.115(d) (West 2010). "Possession" means that the accused exercised "actual care, custody, control, or

management" over the substance. Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2014); *see Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). While mere presence alone is not sufficient to establish possession, it may become sufficient to establish guilt beyond a reasonable doubt "when combined with other evidence, either direct or circumstantial." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Independent facts and circumstances may link the accused to the contraband such that it may be justifiably concluded that the accused knowingly possessed the contraband. *Id.* at 161–62.

Relevant links connecting the defendant to possession of an illegal substance include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness

of guilt.  *Id.* at 162 n.12; *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  These factors are non-exclusive, and it is not the number of links but the "logical force" of all the evidence that supports a finding of guilt.  *Olivarez*, 171 S.W.3d at 291–92.

Here, numerous links connect Simington to the possession of the cocaine seized by police officers.  First, Simington was present during the search and was in close proximity to the drugs, which were discovered in plain view.  Second, with trap houses, it is common for more than one dealer to sell drugs out of the same location, and the record demonstrates that officers were unable to connect the apartment to a particular name.  Furthermore, it was clear that no one lived in the apartment because there was a lack of furniture, food, and clothes; while there was a TV, a couch, and a chair, narcotics officers stated that this was not uncommon for trap houses.  Simington argues that he cannot be connected to the apartment because he did not sell the drugs to the informant during the controlled buys and because his existence had not come to the attention of the narcotics officers until after the execution of the search warrant, but these facts are significantly outweighed by the logical force of the evidence linking Simington to the narcotics.

Simington argues that he was merely a misfortunate "bystander in the wrong place at the wrong time with $600 dollars in his pocket."  However, while having large sums of cash on one's person may not be dispositive, the record shows that when large amounts of money are made up of small denominations,

5

officers will generally equate it to narcotics sales. Moreover, an officer at the scene testified that Simington was likely not at the apartment to purchase narcotics because the door was barricaded from the inside. According to the officer, usually when someone was inside the apartment buying drugs, the barricade came down.

Simington also argues that he cannot be linked to any items inside of the apartment because police were unable to recover his fingerprints on any of the seized items, but this is not dispositive in our sufficiency review. As the record shows, things like the little baggies of cocaine were never tested for fingerprints, and other items that were tested, like the gun, did not reveal any fingerprints at all.

Viewing all of the evidence in the light most favorable to the verdict, we hold that a rational jury could have found beyond a reasonable doubt that Simington intentionally or knowingly possessed the cocaine discovered in the apartment. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Evans*, 202 S.W.3d at 162; *Olivarez*, 171 S.W.3d at 291–92. Thus, we hold that the evidence is sufficient to support Simington's conviction for possession with intent to deliver between 4 and 200 grams of cocaine, and we overrule his first point. *See, e.g.*, *Gabriel v. State*, 842 S.W.2d 328, 330–31 (Tex. App.—Dallas 1992) (holding same based on similar facts), *aff'd*, 900 S.W.2d 721 (Tex. Crim. App. 1995).

### C. Unlawful Possession of a Firearm

Under section 46.04 of the Texas Penal Code, a person commits a crime if he possesses a firearm after the conviction and before the fifth anniversary of his release from confinement. Tex. Penal Code Ann. § 46.06(a)(1) (West 2011). There is no dispute that Simington was incarcerated for conviction of a felony less than five years prior to his arrest in this case; Simington only argues that the evidence was insufficient to link him to possession of the gun. Like in the narcotics context, when there is no evidence that the appellant was in exclusive control of the firearm, the State must offer additional, independent facts and circumstances linking him to the weapon. *See Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd) (citing *Poindexter*, 153 S.W.3d at 406). We use the same non-exclusive relative links set out above. *See Olivarez*, 171 S.W.3d at 291–92.

The evidence demonstrates that Simington was present during the search and that the gun was loaded, at his feet and readily accessible, and in plain view. As the State contends, "[I]t [is] rational to conclude that [Simington] was using the firearm found near him to protect that stash of drugs." Indeed, as explained above, the narcotics officers testified that the apartment was being used as a trap house. While Simington's fingerprints were not found on the gun, neither were any other finger prints discovered. Viewing all of the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Simington exercised actual care, custody, control, or management

over the gun.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Poindexter*, 153 S.W.3d at 405–06.  Accordingly, the evidence is sufficient to support Simington's conviction for unlawful possession of a firearm.  *See, e.g.*, *Hamilton v. State*, No. 08-09-00012-CR, 2011 WL 676097, at *1–3 (Tex. App.—El Paso Feb. 25, 2011, no pet.) (not designated for publication) (holding same under similar facts). We overrule his second point.

## IV. CONCLUSION

Having overruled Simington's two points, we affirm the trial court's judgments.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  WALKER, MEIER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 25, 2015