Opinion issued December 22, 2009







          





In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00138-CR
____________

JAMES BLACKMAN, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1121171
 

 
 
O P I N I O N
          We deny the State’s motion for rehearing. See Tex. R. App. P. 49.3. We
withdraw our August 27, 2009 opinion, substitute this opinion in its place, and vacate
our August 27, 2009 judgment.



          A jury found appellant, James Blackman, guilty of the offense of possession
of a controlled substance, namely cocaine, with intent to deliver


 and assessed his
punishment at confinement for thirty years. In three points of error, appellant
contends that the evidence is legally and factually insufficient to support his
conviction and that the trial court erred in denying his Batson


 challenge.
          We reverse and render.
Factual Background
          Pasadena Police Department (“PPD”) Detective T. Neilon testified that on June
14, 2007, while “conducting surveillance at a Super 8 Motel,” he saw three men
arrive in a “Chrysler mini-type van with North Carolina plates” and check into the
motel for the night. The driver, later identified as James Gordon, and the two
passengers, later identified as appellant and Mario Ayala-Garcia, spent the night at
the motel. Neilon, the next morning, saw the three men load their luggage, check out
of the motel, and drive away. Neilon noticed that Gordon drove the van, appellant
sat in the front passenger seat, and Ayala-Garcia sat “in the back passenger’s seat of
the van directly behind [appellant].” 
          Detective Neilon continued his surveillance of the three men throughout the
day. Neilon followed the men to a “tire shop,” a car wash, a clothing store, and then
back to the car wash. At the car wash, Gordon parked the van in one of the stalls as
rain began to fall. As the men waited inside the van, Neilon noticed that the van’s
“headlights were on, and the windshield wipers were going back and forth.” After
forty to fifty minutes, a green Toyota Camry stopped in front of the van, paused, and
then drove away. Gordon, still driving the van, followed the Toyota into a residential
neighborhood where the Toyota and the van parked on the side of the road. As
Neilon continued his surveillance driving past the van, he saw appellant “at the back
of the van with the hatch open.” Appellant appeared to be “retrieving something out
of the van.” Neilon also saw Gordon and the driver of the Toyota “walking towards
the rear of the van, kind of side by side.” Neilon then lost his line of sight.
          When Detective Neilon re-established his surveillance of the van, he saw that
the van had been moved to the other side of the street and was facing the opposite
direction. After fifteen to twenty minutes, Neilon saw the two vehicles drive around
the neighborhood and then return to their previous location. After the vehicles
stopped, Neilon saw a man get out of the Toyota and carry “a box of some type with
both hands” to the van. The man handed the box to Gordon through the window,
shook Gordon’s hand, and then walked back to the Toyota. 
          When the vehicles drove away, Detective Neilon again followed the van.
Noticing that Gordon’s driving had become “very erratic,” Neilon contacted PPD
Detective C. Scott, who was nearby in a marked patrol car. Scott followed the van
and eventually initiated a traffic stop. Neilon joined Scott and the three men from the
van at a gas station, where he saw that Scott had asked appellant, Gordon, and Ayala-Garcia to step outside of the van. With the men out of the van, Neilon and other
police officers searched the van and recovered a box that contained three kilograms
of cocaine.
          On cross-examination, Detective Neilon conceded that he did not see what, if
anything, appellant had “retrieved” from the back of the van. Neilon agreed that he
“did not see [appellant] make contact with the driver of the Toyota” or “give the
driver of the Toyota anything.” Neilon further agreed that he “did not see [appellant]
pass anything to Mr. Gordon.” Neilon also stated that he found the box containing
the cocaine “behind the driver’s seat on the floorboard” with a “lid on it” and “a
blanket on top of the lid.” Neilon admitted that he never saw appellant “reaching
behind him towards the back passenger’s seat” or sitting anywhere in the van except
the “front passenger’s seat.”
          Detective Scott testified that he saw the van change lanes without signaling,
failing to yield right of way, and generally driving in a “very erratic” and “unsafe”
manner. After he turned on his lights and sirens, the van pulled off of the highway
into a gas station. Scott asked the three men to step out of the van, and they
cooperated. Scott confirmed that the box containing the cocaine was “covered by a
blanket” in “the backseat on the floorboard.” 
          On cross-examination, Detective Scott agreed that he did not see anyone in the
car make any furtive movements. Scott conceded that when he looked in the back
seat he “just saw the blanket there.” He could not see whether there was an object
under the blanket. 
          PPD Officer C. Williams testified that during the booking process, appellant,
who had $637 in his wallet, said he was “[f]rom the Saint Petersburg, Florida area.” 
Williams later learned that the van had been rented from Avis Rent-a-Car. Williams
explained, generally, that during a traffic stop, he looks for indicators of criminal
activity such as whether detainees are “overly nervous, sweating, fidgeting around,”
the detainees’ stories change under questioning, and the detainees use props to induce
officers “to let their guard down” or to tell officers “[the detainees are] good guy[s].” 
Williams opined that a Bible, with the name of an unknown person written in it,
found in the van, and an invitation, found in the sun visor of the van, to “Wright’s and
Smith’s Annual Family Reunion” with “no date time or specific location” were such
props. He also explained that narcotics traffickers often use rented vehicles because
they are not “subject to forfeiture [or] seizure by the State.” He indicated that
Interstate 10 East through Houston is labeled as a “pipeline for both money and drugs
going east and west coast to coast.” 
          On cross-examination, Williams testified that he later learned that the driver
of the Toyota had not been identified or charged with a crime. Williams agreed that
he never saw appellant “hand anything to the person in the Toyota,” “receive anything
from the person in the Toyota,” or handle the box.
          PPD Officer W. R. Kelly testified that “[Houston has] become a hub for
narcotics distribution” because “it has several corridors coming into [it],” such as
“major interstates that [allow] you to get [narcotics] in through the port system.” He
explained that three kilograms of cocaine would not be purchased for “personal use”
but rather for “distribution.” Kelly also explained that in hotel/motel narcotics
investigations police officers generally look for “out of state cars, people paying by
cash, a lot of foot traffic in and out of the rooms.” Other typical behavioral patterns
of narcotics traffickers include “constantly moving about,” “be[ing] on cellphones in
and amongst each other,” going “in and out of the room several times,” and “going
to different parts of town, always on the phone, continuing looking around as though
they might be waiting for something.” Kelly opined that it would be uncommon in
“large scale narcotics transactions for . . . drug dealers to include other witnesses that
are not involved in the deal.” 
Standard of Review
          We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). 
Our role is that of a due process safeguard, ensuring only the rationality of the trier
of fact’s finding of the essential elements of the offense beyond a reasonable doubt. 
See Moreno v.State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988); Allen v. State, 249
S.W.3d 680, 688 (Tex. App.—Austin 2008, no pet.). In our analysis, we give
deference to the responsibility of the fact-finder to fairly resolve conflicts in
testimony, to weigh evidence, and to draw reasonable inferences from the facts. 
Williams, 235 S.W.3d at 750. A jury may not, however, reasonably infer an ultimate
fact from meager circumstantial evidence, none more probable than another. 
Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 392 (Tex. 1997); Deschenes v.
State, 253 S.W.3d 374, 381 (Tex. App.—Amarillo 2008, pet. ref’d); Allen, 249
S.W.3d at 703. To be legitimate or permissible, an inference must be deduced as a
logical consequence of the facts presented in evidence, and there must be a logical
and rational connection between the facts in evidence and the fact to be inferred. 
United States v. Michelena-Orovio, 702 F.2d 496, 504 (5th Cir.), aff’d on reh’g, 719
F.2d 738 (5th Cir. 1983) (en banc). An inference, therefore, is a conclusion reached
by considering other facts and deducing a logical consequence from them. Hooper
v. State, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). Evidence in a knowing
possession of contraband case must amount to more than mere conjecture. Dickey v.
State, 693 S.W.2d 386, 389 (Tex. Crim. App. 1984). Speculation, or conjecture, is
mere theorizing or guessing about the possible meaning of facts and evidence
presented. Hooper, 214 S.W.3d at 16. A conclusion reached by speculation may not
be completely unreasonable, but it is not sufficiently based on facts or evidence to
support a finding beyond a reasonable doubt. Id. Thus, proof that amounts to only
a strong suspicion or mere probability of guilt is insufficient to sustain a conviction. 
Urbano v. State, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992); In re J.M.C. D., 190
S.W.3d 779, 781 (Tex. App.—El Paso 2006, no pet.); Hall v. State, 86 S.W.3d 235,
240 (Tex. App.—Austin 2002, pet. ref’d); Grant v. State, 989 S.W.2d 428, 433 (Tex.
App.—Houston [14th Dist.] 1999, no pet.). If circumstantial evidence provides no
more than a suspicion, the jury is not permitted to reach a speculative conclusion. 
Louis v. State, 159 S.W.3d 236, 246 (Tex. App.—Beaumont 2005, pet. ref’d). 
          Our duty requires us to “ensure that the evidence presented actually supports
a conclusion that the defendant committed” the criminal offense of which he is
accused. Williams, 235 S.W.3d at 750. If the undisputed facts allow only one logical
inference, neither jurors nor the reviewing court may disregard those facts. Evans v.
State, 202 S.W.3d 158, 162–63 (Tex. Crim. App. 2006). “If, based on all the
evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of
the defendant’s guilt, due process requires that we reverse and order a judgment of
acquittal.” Fisher v. State, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993) (quoting
Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992)); see also Guevara v.
State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).
Legal Sufficiency
          In his first point of error, appellant argues that the evidence is legally
insufficient to support his conviction because the State failed to prove that he
exercised care, custody, or control over the cocaine found in the shoe box on the
floorboard behind the driver’s seat in the van. 
          Here, the State’s primary theory was that appellant was in joint possession of
the cocaine found in the shoe box on the floor board behind the driver’s seat in the
van. An individual commits the offense of possession of a controlled substance in an
amount more than 400 grams if he knowingly and intentionally possesses the
controlled substance in the prescribed amount, by aggregate weight, including
adulterants or dilutants. See Tex. Health & Safety Code Ann. §§ 481.002(5),
481.102(3)(D), 481.112(a), (f). In order to prove possession with intent to deliver,
the State must also prove that the defendant intended to deliver the controlled
substance to another. See id. § 481.002(38) (Vernon Supp. 2009), § 481.112(a);
Parker v. State, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d). 
          To prove “possession” of a controlled substance, the State must prove that the
accused (1) exercised care, custody, control, or management over the substance and
(2) knew that the matter possessed was a controlled substance. Evans, 202 S.W.3d
at 161. Possession is a “voluntary act if the possessor knowingly obtains or receives
the thing possessed or is aware of his control of the thing for a sufficient time to
permit him to terminate his control.” Tex. Penal Code Ann. § 6.01(b) (Vernon
2003). Not only must a person voluntarily engage in conduct, a person does not
commit an offense (except for certain strict-liability offenses) unless he or she
engages in the proscribed conduct with the culpable mental state that the definition
of the offense requires. See id. § 6.02(a) (Vernon Supp. 2009); Moss v. State, 850
S.W.2d 788, 795 (Tex. App.—Houston [14th Dist.] 1993, pet. ref’d) (evidence must
show that defendant committed voluntary act with requisite culpable mental state). 
          Here, the trial court also instructed the jury that it could find appellant guilty
if he (1) acted with the intent to promote or assist in the commission of the offense
and (2) he solicited, encouraged, directed, aided, or attempted to aid Gordon or
Ayala-Garcia to possess the cocaine with the intent to deliver it. Under the law of
parties, a defendant may be convicted of the offense of possession with intent to
deliver if he (1) acting with the intent to promote or assist the commission of the
offense, (2) solicits, encourages, directs, aids, or attempts to aid another person in
committing the offense. See Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003). 
Knowledge of the presence of cocaine is a required element for conviction as a party
to the offense. Acy v. State, 618 S.W.2d 362, 364–65 (Tex. Crim. App. 1981); see
Tex. Health & Safety Code Ann. § 481.115(a) (Vernon Supp. 2009). However,
mere presence in the vicinity of a controlled substance, or in a place where a
controlled substance is being used or possessed by others, will not support a finding
that a person is a party to an offense. Robinson v. State, 174 S.W.3d 320, 325 (Tex.
App.—Houston [1st Dist.] 2005, pet. ref’d). In fact, “mere presence, even with
knowledge of an offense, does not make one a principal or a party to the offense and
will not support a conviction.” Acy v. State, 618 S.W.2d at 365 (emphasis added).


 
Presence, when “combined with other facts,” may suffice to show that an accused was
a participant in a criminal offense. Thomas v. State, 645 S.W.2d 798, 800 (Tex. Crim.
App. 1983). But one of the basic tenets of our penal code is that a person commits
an offense only if he voluntarily engages in conduct which is proscribed by the penal
code. See Tex. Penal Code Ann. § 6.01(a) (Vernon 2003). Conduct means an act
or omission and its accompanying mental state. Id. § 1.07(a)(8) (Vernon Supp. 2009). 
Under our law, a person is not punished for his status, but for his conduct. Beier v.
State, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985). In determining whether an accused
has participated as a party, a court may look to events occurring before, during, and
after the commission of the offense, and may rely on the actions of the accused which
show an understanding and common design to do the prohibited act. Id. 
Joint Possession and the “Links” Rule
          When, as here, the accused is not in exclusive possession of the place where
contraband is found, additional independent facts and circumstances must “link” the
accused to the contraband “in such a way that it can be concluded that the accused
had knowledge of the contraband and exercised control over it.” Roberson v. State,
80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). The evidence
must demonstrate that the link between the accused and the contraband “generates a
reasonable inference that the accused knew of the contraband’s existence and
exercised control over it.” Id. In other words, the State must establish that the
defendant’s connection with the narcotics was more than just fortuitous. Poindexter
v. State, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). 
          The Texas Court of Criminal Appeals has explained that the purpose of the
links rule is to “protect the innocent bystander from conviction based solely upon his
fortuitous proximity to someone else’s [narcotics].” Id. at 406. The links rule
“simply restates the common-sense notion that a person—such as a father, son,
spouse, roommate, or friend—may jointly possess property like a house but not
necessarily jointly possess the contraband found in that house.” Id. (emphasis
added). Thus, “[w]hen the accused is not in exclusive possession of the place where
the substance is found, it cannot be concluded that the accused had knowledge of and
control over the contraband unless there are additional independent facts and
circumstances which affirmatively link the accused to the contraband.” Id. 
          Texas courts have identified “many non-exhaustive factors” that may
demonstrate a link to contraband. Roberson, 80 S.W.3d at 735. These factors include
(1) the accused’s presence when a search is conducted, (2) whether the narcotics were
in plain view, (3) the accused’s proximity to and the accessibility of the narcotics, (4)
whether the accused was under the influence of narcotics when arrested, (5) whether
the accused possessed other contraband or narcotics when arrested, (6) whether the
accused made incriminating statements when arrested, (7) whether the accused
attempted to flee, (8) whether the accused made furtive gestures, (9) whether there
was an odor of contraband or narcotics, (10) whether other contraband or narcotic
paraphernalia was present, (11) whether the accused owned or had the right to possess
the place where the narcotics were found, (12) whether the place in which the
narcotics were found was enclosed, (13) whether the accused was found with a large
amount of cash, and (14) whether the conduct of the accused indicated a
consciousness of guilt. Evans, 202 S.W.3d at 162 n.12. These factors constitute “a
shorthand way of expressing what must be proven to establish that [narcotics] were
possessed knowingly.” Roberson, 80 S.W.3d at 735. The number of linking factors
present is not as important as the “logical force” they create to prove that an offense
was committed. Id. 
          Here, the State relies specifically upon certain factors to link appellant to the
cocaine found in the shoe box on the floorboard behind the driver’s seat in the van. 
In our analysis, we examine and evaluate the pertinent factors in light of the links
doctrine and in accordance with the legal sufficiency standard of Jackson. See Evans,
202 S.W.3d at 161. In its brief, the State contends that the following evidence
sufficiently links appellant to the cocaine: (1) appellant, Gordon, and Ayala-Garcia
arrived at the motel “in a rented van with North Carolina license plates”; (2) appellant
“spent the night of June 14, 2007 and the entire next day with Gordon and Ayala-Garcia, conversing and otherwise exhibiting a significant familiarity with them”; (3)
appellant, Gordon, and Ayala-Garcia “spent a notable amount of time waiting at the
car wash until the Toyota pulled up in front of the van”; (4) the van, in which
appellant was a passenger, “followed the Toyota to a residential neighborhood”
without any “visible communication between the driver of the Toyota and the
occupants of the van”; (5) appellant “reached into the rear of the van, where their
belongings were stored”; (6) appellant “was the passenger in a vehicle in which a
very large amount—three kilograms—of cocaine was found”; (7) the cocaine was
“conveniently accessible” to appellant; and (8) the cocaine had a very strong chemical
smell. In support of its argument that this evidence links appellant to the cocaine, the
State relies on Robinson v. State, 174 S.W.3d 320 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d), and Fields v. State, 932 S.W.2d 97 (Tex. App.—Tyler 1996, pet.
ref’d.).
          The State’s reliance on Fields is misplaced. In Fields, the Tyler Court of
Appeals held that a jury could have found that the evidence linked the defendant,
Fields, to cocaine found under the hood of a rented Lincoln Continental Towncar in
which he was the front-seat passenger. Fields, 932 S.W.2d at 100–04. The Tyler
Court of Appeals reasoned that Fields was linked to the cocaine by the following
evidence: 
(1) inasmuch as the Lincoln had been rented by Fields’ [sic] girlfriend,
Bostik, Fields had had possession of the vehicle for the preceding five
or more days while Fields & Johnson had been in Grand Prairie; (2) the
drugs were found concealed beneath the closed hood of the Lincoln, and
the hood latch was controlled from the interior of the car; (3) a can of air
freshener was located under the seat occupied by Fields, and the air
freshener odor matched the scent of the contraband when found; (4)
Fields untruthfully denied his prior drug offenses; (5) Fields and
Johnson gave conflicting stories as to their purpose for coming to Texas
and activities while in Texas; (6) Fields carried an inadequate amount
of clothing for a five day trip; (7) Fields exhibited unnatural equanimity
and lack of concern throughout the temporary detention and the
subsequent investigation. 
Id. at 104. 
          Of the seven links that the Tyler Court of Appeals relied upon, only the first
link has any possible similarity to this case, which also involves a rented car. 
However, the Tyler Court of Appeals did not rely merely on the fact that the
defendant was found in a rented car, but rather on the fact that Fields’s girlfriend had
rented the car, which indicated that Fields “had possession of the vehicle for the
preceding five or more days.” Id. Here, although Officer Williams testified that the
van had been rented, there is no evidence that appellant was the individual who had
rented the van. The State does not specify how Fields supports its argument that the
evidence links appellant to the cocaine in this case, but in reviewing the links relied
upon in Fields, we conclude that Fields is inapplicable to the facts in this case. See
id. 
          The State also relies on Robinson to support its contention that there “were
sufficient links between appellant and the contraband to conclude that appellant
knowingly possessed the cocaine.” In Robinson, the defendant was the front-seat
passenger in a four-door pickup truck that had been stopped by a police officer. 
Robinson, 174 S.W.3d at 323. The driver did not have a driver’s license or any other
identification. Id. The driver told the police officer that the defendant “should have
been driving,” but the defendant did not have a driver’s license either. Id. When he
smelled burnt marijuana and discovered a semi-automatic firearm on the floorboard
by the defendant’s feet, the police officer searched the truck and discovered two
kilograms of cocaine hidden in a compartment built into the back wall of the truck. 
Id. at 323–24. The “logical force” created by the evidence in Robinson is absent in
the instant case. See id. at 326–30; see also Roberson, 80 S.W.3d at 735 (requiring
that “logical force” of evidence prove that accused committed the offense).
          First, in Robinson, this Court concluded that the defendant was linked to the
cocaine because the cocaine was “conveniently accessible” to the defendant. 
Robinson, 174 S.W.3d at 326. Contraband is “conveniently accessible” when it is
“within the close vicinity of the accused and easily accessible while in the vehicle so
as to suggest that the accused had knowledge of the contraband and exercised
control over it.” Id. (emphasis added). We reasoned that the defendant had control
over the truck and its contents based on evidence that he had keys to the truck, “was
supposed to be driving,” and had access to the truck for at least two days. Id. at 327. 
Additionally, we noted that the compartment containing the cocaine “was unlocked
and unable to be closed completely because a shirt was stuffed in the opening.” Id. 
We concluded that this evidence suggested that the defendant had knowledge of and
exercised control over the cocaine. Id.
          Here, the State demonstrated that the cocaine was within reach of appellant,
who was seated in the front passenger seat. However, the State did not show that
appellant had control over the van or that his proximity to the cocaine suggested that
he had knowledge of the contraband and exercised control over it. Cf. id. at 326–27. 
At trial, the State argued that “this cocaine came through the window in a shoebox
from the driver of the Toyota.” The cocaine was in a closed box and covered by a
blanket, and there is no evidence that appellant handled the box or could have known
that the box contained cocaine. Although the box containing the cocaine was found
within the close vicinity of appellant, there is no evidence that appellant had
knowledge of the contents of the box or exercised control over it. Cf. id. at 326. 
Indeed, the evidence presented by the State linked only Gordon to the box containing
the cocaine.
          Second, in Robinson, we concluded that the defendant was linked to the
cocaine because of his and the driver’s conflicting statements, which implied “that
they were attempting to conceal their activities and to avoid revealing their identities,
the ownership of the truck they were driving, and the real reason they had gone to
Houston.” Id. at 328. The State does not rely on, nor do we find in the record,
evidence of any such conflicting statements that would link appellant to the cocaine
in this case.
          Third, in Robinson we concluded that the defendant was linked to the cocaine
because of several “other factors,” i.e., the defendant “had no identification, luggage,
toiletry kit, toothbrush, or razor for the purported overnight trip, but he did have a
loaded firearm, ostensibly to protect the cocaine.” Id. at 329. The State does not
assert, nor do we find in the record, that any of these “other factors” are present in this
case.
          Having concluded that neither Robinson nor Fields supports the State’s
contention that the evidence sufficiently links appellant to the cocaine in the instant
case, we now evaluate the eight factors presented by the State and decide whether the
“logical force” they create proves that appellant “possessed” the cocaine. See
Roberson, 80 S.W.3d at 735. 
          First, the State asserts that appellant, Gordon, and Ayala-Garcia arrived at the
motel “in a rented van with North Carolina license plates,” but the State does not
explain how this piece of evidence in any way links appellant to the cocaine. There
is no evidence that appellant rented or had control of the van. Cf. Robinson, 174
S.W.3d at 326–27; Fields, 932 S.W.2d at 104. It is undisputed that no one saw
appellant drive the van during the two days that it was under surveillance. Evidence
that appellant was a passenger “in a rented van with North Carolina license plates”
does not, in and of itself, link appellant to the cocaine, which was apparently
delivered to Gordon by the driver of the Toyota.
          Second, the State asserts that appellant “spent the night of June 14, 2007 and
the entire next day with Gordon and Ayala-Garcia, conversing and otherwise
exhibiting a significant familiarity with them.” Although this evidence links
appellant to Gordon and Ayala-Garcia, it does not link him to the cocaine. 
          Third, the State asserts that appellant, Gordon, and Ayala-Garcia “spent a
notable amount of time waiting at the car wash until the Toyota pulled up in front of
the van.” The driver of the Toyota did deliver a box containing cocaine to Gordon. 
However, there is no evidence that appellant exercised any control over Gordon or
Gordon’s driving. There is also no evidence of what was said between Gordon and
the driver of the Toyota or that appellant was privy to their conversation. Although
the evidence presented links Gordon to the cocaine, it does not similarly link
appellant to the cocaine.
          Fourth, the State asserts that the van “followed the Toyota to a residential
neighborhood” without any “visible communication between the driver of the Toyota
and the occupants of the van.” Here, as with the third factor, because appellant was
merely a passenger in the van while Gordon was following the Toyota, this evidence
does not link appellant himself to the cocaine found in the box behind the driver’s
seat of the van.
          Fifth, the State asserts that appellant had, during Detective Neilon’s
surveillance, “reached into the rear of the van, where their belongings were stored.” 
Neilon testified that, at one point, he “observed [appellant] at the back of the van with
the hatch open.” The State does not explain how this links appellant to the cocaine
that was later discovered in a closed box on the floorboard in the backseat area of the
van. More importantly, when Neilon saw appellant in the back of the van, the driver
of the Toyota had not yet delivered the box to Gordon. There is no evidence
indicating what, if anything, appellant was reaching for in the rear of the van, and
Neilon testified that the three men had their luggage with them in the van. Although
evidence about appellant reaching into the rear of the van may link appellant to his
luggage, it does not link him to the cocaine.
          Sixth, the State asserts that appellant “was a passenger in a vehicle in which a
very large—three kilograms—of cocaine was found.” A large amount of contraband
may indicate an affirmative link if the “amount of contraband found was large enough
to indicate the defendant knew of its existence.” Villegas v. State, 871 S.W.2d 894,
897 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (90 pounds of cocaine and 165
pounds of marijuana found in plain view); Sosa v. State, 845 S.W.2d 479, 482–83
(Tex. App.—Houston [1st Dist.] 1993, pet. ref’d) (600 kilograms of cocaine found
in truck driven by defendant who had sole and exclusive control over truck); see also
Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981) (concluding that State
proved more than defendant’s presence when defendant “moved to the rear of the
house” and helped retrieve “large quantity of contraband”). Here, however, where
the package containing three kilograms of cocaine was actually concealed in a closed
box delivered to Gordon, the amount of cocaine does not indicate that appellant knew
of its existence. See Roberson, 80 S.W.3d at 740 (holding that defendant was not
linked to 24 grams of cocaine found in pockets of backseat passenger in car and on
floorboard of passenger side of car). This is especially so given the fact that the
driver of the Toyota handed the box directly to Gordon. Further, even if appellant
knew the shoe box contained cocaine, no evidence indicates that appellant directly
or indirectly exercised control of the box or in any way aided Gordon in obtaining or
exercising control over the box. See Allen, 249 S.W.3d at 698–99 (“[O]ne is not a
party to joint possession even if she was present and had knowledge of an offense by
another. . . . A defendant’s knowledge of the presence of the contraband is
insufficient to establish the requisite mental state knowledge of his or her possession
of the drugs.”).
          Seventh, the State asserts that the cocaine was “conveniently accessible” to
appellant. However, as noted above, the cocaine was not “conveniently accessible”
to appellant because it was not “within the close vicinity of the accused and easily
accessible while in the vehicle so as to suggest that the accused had knowledge of the
contraband and exercised control over it.” See Robinson, 174 S.W.3d at 326
(emphasis added). Again, the driver of the Toyota handed the box directly to Gordon,
and there is no evidence that appellant exercised control over it. 
          Finally, the State asserts that the cocaine had a very strong chemical odor. 
Although Officer Williams did testify that cocaine generally has a very strong,
chemical odor, here, there is no evidence that an odor of cocaine was detected in the
van. See Evans, 202 S.W.3d at 162 n.12. PPD Forensic Chemist C. Busby testified
that the cocaine was “packaged in plastic tape [and] rubber.” None of the police
officers testified that they smelled a strong, chemical odor when they searched the
van. Absent any evidence that appellant could have smelled an odor of cocaine in the
van, testimony that cocaine generally has a strong, chemical odor does not link
appellant to the cocaine in this case. 
          The State’s case rests entirely on appellant’s presence in the van.


 Appellant
rode as a passenger in a rented van that was driven at all times by Gordon. No
evidence indicates that appellant exercised control of the van or over the box that was
later found to contain three kilograms of cocaine. In fact, the driver of the Toyota
handed the box directly to Gordon, and there is no evidence that appellant aided
Gordon in obtaining the box or exercising control over it. The cocaine was not found
in plain view where one would immediately know of its presence. Appellant was not
under the influence of narcotics. No illegal narcotics of any kind or narcotics
paraphernalia was found on his person. There was no odor of cocaine in the van. 
Appellant was cooperative throughout the stop and made no furtive gestures. He did
not engage in conduct indicating a consciousness of guilt and did not attempt to
conceal or destroy evidence. Appellant did not attempt to flee or escape and made
no incriminating or inconsistent statements connecting himself to the narcotics. The
testimony of Officers Williams and Kelly about the typical behavior of narcotics
traffickers is probative as to whether they, in their minds, had reasonable suspicion
to further detain the men in the van. However, there still remains a lack of the
necessary “additional independent facts and circumstances” that link appellant to the
cocaine. See Poindexter, 153 S.W.3d at 406. None of the eight factors upon which
the State relies shows that appellant knowingly exercised actual care, custody,
control, or management over the cocaine.


 
          Appellant’s presence in a van with a shoe box containing three kilograms of
cocaine may be highly suspicious. Roberson, 80 S.W.3d at 742. Nevertheless,
“possession means more than being where the action is.” Id. Proof amounting only
to a strong suspicion or mere probability will not suffice. Id. As in Roberson, the
State has presented some “potential linking factors” that “might raise suspicion” but
which do not have the logical force necessary to actually link appellant to the cocaine. 
See id. The State presented no evidence that appellant voluntarily engaged in conduct
demonstrating that he possessed the cocaine found in the shoe box on the floorboard
behind the driver’s seat in the van. Even when viewed together in the light most
favorable to the verdict, the factors relied upon by the State “do not create the logical
force necessary to allow a rational juror to find, beyond a reasonable doubt,” that
appellant exercised knowingly actual care, custody, control, or management over the
cocaine.


 See id. 
 
The Law of Parties
          Nor is there any evidence that appellant in any way aided or assisted Gordon
in obtaining the box containing the cocaine or in exercising control over the box. 
Again, it is well-settled law that mere presence, even with knowledge of an offense,
does not make one a principal or a party to the offense. Acy, 618 S.W.2d at 365;
Allen, 249 S.W.3d at 691. Considering the evidence of what appellant did before,
during, and after the cocaine was handed to Gordon, even assuming that appellant
knew that the shoe box contained cocaine, there is no evidence that appellant was a
participant in the transaction. See Beier, 687 S.W.2d at 4. Here, the State proved that
appellant rode as a passenger in a rented van from Florida to Texas; stayed the night
in a motel and rode to a car wash and clothing store with Gordon and Ayala-Garcia;
waited at the car wash in the van with the others for forty to fifty minutes after it had
already been washed; rode with the others in the van to a residential neighborhood;
talked on his cell phone; walked towards the back of the van at the same time as
Gordon and the driver of the Toyota were walking by the side of the van; and sat in
the van when the driver of the Toyota handed Gordon the shoe box containing
cocaine. Appellant’s behavior was essentially passive, not active. The State
presented no evidence that appellant voluntarily engaged in conduct demonstrating
that he, with the intent to promote or assist Gordon in the commission of the offense
of possession of cocaine, did anything to solicit, encourage, direct, aid or attempt to
aid Gordon in committing the offense. Viewing the evidence in the light most
favorable to the verdict, there is no evidence that appellant was a party to Gordon’s
possession of the cocaine.
Conclusion
          Accordingly, we hold that the evidence is legally insufficient to support
appellant’s conviction of the offense of possession of a controlled substance. 
          We sustain appellant’s first point of error. Having held that the evidence is
legally insufficient, we need not address appellant’s second and third points of error. 
          We reverse the judgment of the trial court and render a judgment of acquittal.



                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Justice Keyes, dissenting.

Publish. Tex. R. App. P. 47.2(b).