**Francisco DeJesus SOSA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00728–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 21, 1993.

David R. Bires, Houston, for appellant.

John B. Holmes, Houston, for appellee.

Before DUGGAN, COHEN and PRICE,* JJ.

## OPINION

PRICE, Justice (Assigned).

This is an appeal from a conviction for possession with intent to deliver more than 400 grams of cocaine. After the jury found appellant guilty, the trial court assessed punishment at life imprisonment and a $10,000 fine. We affirm.

Appellant testified he was employed as a truck driver by the Coast-to-Coast Trucking Company. His assignments required him to transport goods interstate in 18–wheel vehicles. In November 1989, he was scheduled to take a load of grocery bags from the Dura Paper Company in Brownsville, Texas, and deliver them to destinations in Lubbock and Dallas, Texas. After the truck was loaded, appellant drove to the Coast-to-Coast parking lot and left his vehicle overnight. The next evening, he departed on his journey. As he approached a truck stop near Harlingen, he testified he was contacted by citizen's band radio and instructed to change from channel 19 to channel 22. Appellant complied, and the "voice" asked whether he was willing to transport "packages to Houston." Appellant stated he had been contacted similarly on previous occasions, but had refused to comply with the request. On this occasion he agreed, and was to receive $1,000 for transporting what he thought might be three packages of marijuana.

Appellant was instructed to stop and refuel, then take the truck to the back of the truck stop. Following those instructions, appellant parked the truck, unlocked the back end, and left for approximately an hour and a half. When he returned, the back was closed, and no one was near the truck. Appellant departed, and was again contacted on channel 22. Appellant stated he was instructed to take the truck to Houston, leave it at a gas station on Almeda Genoa Road, and take a taxi to a hotel. Appellant was further instructed that if he arrived early he was to "waste time" by taking the truck to a "blue shop" on Almeda Genoa Road to have a tire changed.

The "blue shop" was a warehouse and the focal point of a narcotics investigation conducted by the Federal Bureau of Investigation and Houston Police Department. Based on a tip from a confidential informer, FBI agent David LeMoine was expecting a delivery of cocaine to be made to the warehouse on November 6, 1989.

Appellant arrived in Houston on November 6, 1989. Because he was early, he drove to the "blue shop" to have a tire changed. While attempting to back the

* The Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

truck into a narrow driveway, he drove off into a ditch and got stuck. The truck was blocking the street and caused traffic to back up approximately one mile in each direction.

LeMoine, who was on surveillance at the warehouse, approached appellant and asked him where he was from. Appellant replied, "Brownsville." LeMoine then inquired how the truck got stuck in the ditch. Appellant replied he was backing into the warehouse parking lot to get a flat tire fixed when his vehicle went over the edge of the driveway into the ditch. Appellant's responses peaked LeMoine's suspicion because: (1) LeMoine expected a cocaine delivery to be made by a truck from Brownsville; (2) none of the truck's tires looked flat; and (3) during his surveillance, LeMoine had never seen anyone fix a flat at that warehouse. LeMoine decided to wait for additional officers before continuing his investigation. Appellant called for a wrecker.

Jesse Clutts arrived in a tow truck to pull appellant's truck out of the ditch. Clutts looked at the situation, determined his tow truck was too small and any attempt to remove the appellant's truck would damage the back of the trailer. He advised appellant he would have to get a different tow truck. Appellant stated he did not care about the damage; he just wanted the truck out of the ditch. By this time, Houston Police Officer Louis A. Flores and FBI Agent Jerry W. Howe arrived at the scene. Together with LeMoine, they walked over to appellant, identified themselves, and advised appellant of his *Miranda* rights. Appellant told the officers he was the operator of the truck, and that he was carrying narcotics or something illegal. Appellant consented to a search of the truck. Over 600 kilograms of cocaine were found in the trailer.

In his first point of error, appellant contends the evidence is insufficient to prove, beyond a reasonable doubt, appellant "knowingly" or "intentionally" possessed cocaine with the intent to distribute.

When reviewing sufficiency of the evidence on appeal, a reviewing court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard is the same for both direct and circumstantial evidence cases. For cases tried prior to *Geesa v. State*, as this case was,[1] in order to affirm a conviction in a circumstantial evidence case, the appellate court must find that the evidence negated all reasonable hypotheses inconsistent with guilt. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex.Crim.App.1991).

In support of a conviction for unlawful possession, the State must prove: (1) the accused exercised care, control, and management over the contraband; and (2) the accused knew the matter was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988). Possession is the act of one who knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control. TEX.PENAL CODE ANN. § 6.01(b) (Vernon 1974).

Appellant claims the State failed to produce evidence affirmatively linking him to the contraband such that a rational trier of fact could conclude, beyond a reasonable doubt, he had knowledge of and exercised control over the contraband. Appellant argues the State failed to negate the hypothesis that he was unaware of the contraband in the trailer, and that such a conclusion was a reasonable deduction from the evidence.

We agree with appellant that when the State relies on circumstantial evidence to prove a "knowing" possession case, the State must affirmatively link an accused to the contraband in such a manner, and to such an extent, that one could reasonably conclude the accused knew of the contraband's existence and exercised control over

---

1. Appellant was brought to trial on March 29, 1990.

it. *Dubry v. State,* 582 S.W.2d 841, 843 (Tex.Crim.App. [Panel Op.] 1979). However, after reviewing the record, we find, contrary to what appellant argues, the State did establish sufficient evidence to affirmatively link appellant with the contraband and thus negated the hypothesis that appellant was not aware of the contraband.

■ The following evidence was established by the State at trial: (1) the FBI received a tip that on November 6, 1989, an 18–wheel truck from Brownsville would be delivering a load of narcotics to a warehouse currently under surveillance in Houston; (2) the subject truck, originally scheduled to transport shopping bags from Brownsville to Lubbock and Dallas, left one day earlier than necessary; (3) Houston was not on the route from Brownsville to Lubbock and Dallas and leaving a day early would allow the trip to Houston and not interfere with the scheduled arrival in Lubbock and Dallas; (4) appellant had exclusive control of the subject truck and sole access to its contents; (5) the truck's trailer, sealed when it left the loading dock, was unsealed when found and contained over 600 kilograms of cocaine in 12 steel containers from Columbia worth in excess of $60 million; (6) appellant confessed he knew he was transporting narcotics or something illegal; (7) appellant was interested in having his truck pulled from the ditch as quickly as possible; (8) appellant showed little concern for any damage that might be caused to the back of his trailer if the original tow truck was used; and (9) appellant did not know who had hired his attorney.

■ In a circumstantial evidence case, it is not necessary for every fact to point directly or indirectly to the defendant's guilt. It is sufficient if the combined and cumulative effect of all the incriminating circumstances point to the defendant's guilt. *Russell v. State,* 665 S.W.2d 771, 776 (Tex.Crim.App.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). Simply presenting a different version of the events, in the absence of evidence supporting a defendant's hypothesis

of innocence, will not render the evidence insufficient to support a conviction. *See Little v. State,* 758 S.W.2d 551, 563 (Tex. Crim.App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). The defendant's hypothesis intended must be reasonable and consistent with the circumstances and the facts proved. It must not be out of harmony with the evidence adduced at trial.

Viewing the evidence in the light most favorable to the verdict, the jury was aware from appellant's admission that appellant knew he was transporting either contraband or something illegal. It was reasonable for the jury to conclude appellant left Brownsville one day early because appellant knew in advance he would be making a trip to Houston to deliver the cocaine, and the extra day was necessary to make the scheduled delivery dates in Dallas and Lubbock. It was reasonable for the jury to believe that if the FBI knew in advance about a large shipment of contraband being transported from Brownsville to Houston, appellant also knew about the arrangements in advance. It was reasonable for the jury to believe that a person entrusted with as much as $60 million in cocaine would be aware of the nature of the cargo and all necessary arrangements for delivering it. It would be unreasonable to think that someone would entrust that amount of cocaine to a person with no knowledge of the substance, who claimed on all previous occasions to have refused to become involved, and who would, unsupervised, transport the cocaine half-way across Texas. It also would be reasonable for the jury to conclude from appellant's lack of concern for any damage that might be caused to his vehicle by having it removed from the ditch with the wrong tow truck, that appellant wanted to expedite the process because he knew he was carrying a large amount of cocaine and wanted to avoid the investigating officers.

The totality of the facts and circumstances is sufficient to affirmatively link appellant to the contraband so that the jury could reasonably conclude appellant was aware of the contraband and exercised con-

trol over it. We further find that the evidence negated all reasonable hypotheses inconsistent with guilt.

Appellant's first point of error is overruled.

In his second point of error, appellant contends he was irreparably harmed by the State's improper argument to the jury during the guilt-innocence stage of the trial. Specifically, appellant complains of the following:

Well, one of the interesting things you can take home with you irregardless [sic] of the decision here in this case is going to be something ironical. The chemist told you this 1329 something pounds of cocaine. It was 630 or 633 packages. But they're irregular packages and if you take that volume of narcotics and divide it by 2.2 pounds which is a kilo of coke, it comes out to 666.

It comes out ironical because on these tapes Sosa says "Well I'll swear on the Bible or Jehovah," and all that and "I didn't know it was that much." He never says "I didn't know what it was." He said—listen to it—"I didn't know it was that much." (The State is referring to appellant's taped confession).

If you know anything about the Book of Revelation, you know the number 666 is a sign of Satan.

■ In order to preserve error with regard to an improper jury argument, a defendant must: (1) make a timely and specific objection; (2) if the objection is sustained, request a curative instruction; and (3) if the instruction is given, move for a mistrial. *See Brooks v. State,* 642 S.W.2d 791, 798 (Tex.Crim.App. [Panel Op.] 1982). Generally, the failure to object or request a curative instruction waives any error on appeal. *Briddle v. State,* 742 S.W.2d 379, 389 (Tex.Crim.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). This rule is founded on the appellate presumption that an instruction to disregard will be obeyed by the jury, thus curing error, unless the facts of the case suggest the impossibility of withdrawing the impression produced on the minds of the jury. *Waldo v. State,* 746

S.W.2d 750, 754 (Tex.Crim.App.1988). Failure to request an instruction to disregard waives error unless the argument is "so inflammatory that its prejudicial affect could not have been alleviated by an instruction to disregard." *See Johnson v. State,* 611 S.W.2d 649, 650 (Tex.Crim.App. [Panel Op.] 1981); *Moore v. State,* 658 S.W.2d 312, 316 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). When it has been decided that error was committed, the proper standard of review, is whether, in light of the record as a whole, there is a reasonable probability the argument complained of might have contributed to appellant's conviction or punishment. *Orona v. State,* 791 S.W.2d 125, 128 (Tex.Crim.App.1990); Tex.R.App.P. 81(b)(2).

■ In this instance, appellant's trial counsel failed to object, request a jury instruction, and move for a mistrial. Thus, any error was waived, unless the argument was so inflammatory it was harmful under Tex.R.App.P. 81(b)(2). *Orona,* 791 S.W.2d at 128, 130. To make this determination, we must calculate the probable impact of the error on the jury in light of the existence of the whole record. *Id.* at 130. Such impact may be determined by considering: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) its probable collateral implications; (5) how much weight a juror would probably place upon the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* at 130; *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

■ In this case, the State merely made a passing reference to biblical prophecy. In light of the overwhelming evidence of appellant's guilt, we cannot say the statement so prejudiced the jury that it was harmful.

Point of error two is overruled.

In his third point of error, appellant complains of the admission into evidence of his tape-recorded confessions. He contends the statements were induced by FBI Agent LeMoine, who promised leniency.

In Texas, a confession induced by a promise is involuntary if the promise: (1) is positive; (2) is of some benefit to the accused; (3) is made or sanctioned by a person in authority; and (4) is of such character as would likely influence the accused to speak untruthfully. *Long v. State*, 823 S.W.2d 259, 277 (Tex.Crim.App. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). In a hearing to determine the voluntariness of a confession, the trial judge is the sole judge of the credibility of the witnesses and, absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Id.*

The trial judge held a hearing to determine the voluntariness of appellant's confessions. While appellant testified he was never forced, threatened, or coerced into making a confession, he claimed LeMoine induced him to cooperate by promising probation. Appellant also testified, however, he did not think LeMoine had authority to carry out his promise. LeMoine testified he urged appellant to cooperate, and told appellant he would inform the United States Attorney's office of any cooperation. He further testified he did not promise appellant anything because he had no authority to do so.

The trial court made findings of fact and conclusions of law. The court found no evidence to suggest appellant was coerced, threatened, or promised anything prior to his confession. The court further concluded appellant voluntarily talked to LeMoine and Flores, and that LeMoine's offer to tell the United States Attorney of appellant's cooperation was not a promise that would secure probation or induce appellant to confess. The court found appellant gave his statements voluntarily and freely, with knowledge and intelligence, and thus appellant's statements were admissible before the jury.

We hold the trial court did not abuse its discretion in admitting appellant's taped confessions. Appellant's third point of error is overruled.

In his fourth point of error, appellant contends he was harmed when the trial court refused to allow opinion testimony on whether he was worthy of belief. The alleged error occurred during the guilt-innocence phase of the trial, and appellant argues the harm contributed to the guilty verdict.

Appellant cites one instance where the State objected to the form of the question, and the witness was not allowed to respond:

Q: Are you familiar with his general reputation in the community in which he resides for the character trait of truth and veracity?

A: Yes.

Q: And is his reputation good or bad?

A: He's a good man.

Q: In your opinion, is he worthy of belief?

Prosecutor: Excuse me, Your Honor. That's an improper form of that question.

The Court: You're to ask two questions, truth and veracity and a law-abiding citizen.

Prosecutor: Excuse me, Your Honor, we object to the law-abiding because that's another issue.

The Court: I don't mind those. But I'll tell you what I'll rule out. I don't want none of that if he's believable or not.

Defense Counsel: Your Honor, just so that the record is absolutely clear, I take exception to the court's ruling that these witnesses are not entitled to express their opinion about his truthfulness.

I believe that the law states that they may do that and I object to the Court's denying me that opportunity.

The Court: Overruled.

The record does not reflect what this character witness would have responded if the question had been allowed and answered. Thus, appellant did not preserve error, if any, for this Court's consideration on appeal. TEX.R.APP.P. 52; TEX.R.CRIM. EVID. 103(a)(2). Further, the record reflects appellant called 10 character witnesses who testified to appellant's reputation for truth and veracity, all of whom testified

appellant had a good reputation for truthfulness. If the trial court erred in denying appellant the opportunity to also ask his character witnesses whether he was worthy of belief, the error, if any, did not contribute to the jury's verdict of guilty. TEX.R.APP.P. 81(b)(2).

Point of error four is overruled, and the judgment is affirmed.