NO. 07-00-0217-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JUNE 17, 2003



______________________________




JUAN GOVEA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 99-431226; HONORABLE RON ENNS, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Juan Govea appeals from his conviction for murder and sentence of
incarceration for life. We affirm.

 During the early morning hours of July 10, 1999, Jose Jaquez was shot and killed
outside of his home in Lubbock County. Appellant was arrested in Merkel, Texas, for the
crime. He was returned to Lubbock County and tried for murder. A jury convicted him and
sentenced him to life imprisonment. 

 Appointed counsel for appellant has filed a Motion to Withdraw and a Brief in
Support thereof. In support of the motion to withdraw, counsel has certified that, in
compliance with Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493
(1967), the record has been diligently reviewed and that in the opinion of counsel, the
record reflects no reversible error or grounds upon which an arguably meritorious appeal
can be predicated. Counsel thus concludes that the appeal is without merit. 

 In reaching the conclusion that the appeal is without merit, counsel advances nine
possible issues. Those issues reference possible trial court errors by: (1) denying
appellant's motion to suppress where appellant, a citizen of Mexico, was not advised of his
rights under the Vienna Convention before making a statement to the police; (2) overruling
appellant's objections to the State's alleged attempt to commit the jury to a verdict of guilt
on voir dire; (3) overruling appellant's objections to the State's alleged forcing of
appellant's wife to invoke her privilege not to testify in the presence of the jury; (4) allowing
the admission of appellant's custodial statements; (5) overruling appellant's objections to
evidence used to impeach his testimony; (6) overruling appellant's objections to
extraneous offense evidence used to impeach/rebut his testimony; (7) allowing admission
of photographs of the victim of an extraneous assault; (8) overruling appellant's motion for
mistrial for improper jury argument by the State during guilt-innocence; and (9) overruling
appellant's request to instruct the jury to disregard alleged improper jury argument by the
prosecutor during the punishment phase of trial. 

 After referencing and analyzing the record of the trial and the applicable law,
counsel has discussed why, under the controlling authorities, there is no reversible error
in the trial court's judgment. See High v. State, 573 S.W.2d 807, 813 (Tex.Crim.App.
1978). Counsel has attached exhibits showing that a copy of the Anders brief and Motion
to Withdraw have been forwarded to appellant, and that counsel has appropriately advised
appellant of appellant's right to review the record and file a response to counsel's motion
and brief. Appellant has filed a response to counsel's motion and brief. 

 We have reviewed the record in connection with the possible issues presented by
counsel for appellant. We have also reviewed the record in regard to the assertions by
appellant in his response to his counsel's Anders brief. 

 Appellant's response focuses on trial court decisions which are reviewed for abuse
of the trial court's discretion. Parts of his response urge that during the suppression
hearing the trial court abused its discretion in various decisions, findings and rulings,
including determining the voluntariness of his custodial statements. Appellant urges that
an abuse of discretion occurred because the trial court's decisions, findings and rulings
credited testimony of police officers over his own testimony. In making such response,
however, appellant acknowledges and cites authority holding that at a suppression
hearing, the trial judge is the trier of fact and exclusive judge of witness credibility and
weight to be given witness testimony. Appellant's conclusions of abused discretion on the
part of the trial court do not comport with longstanding and well-established law concerning
appellate deference to trial court discretion. 

 Appellant's response also ascribes the crime of aggravated perjury to one of the
officers who testified at trial because the officer's testimony differed from his written report. 
His response cites the Penal Code and case law for elements of aggravated perjury, but
totally fails to address the standard of appellate review for conflicts in evidence presented
to a jury. Such standards entail legal and factual sufficiency of the evidence underlying
decisions of the factfinder based on deference to the factfinder's resolution of conflicts in
evidence and credibility questions. The standards do not call for or authorize our re-evaluation of evidence by substituting a view of the evidence favored by the losing party. 
When conflicting evidence is presented to a jury, it is well-established that the jury is to
determine the credibility of the witnesses and the weight to be given their testimony. 
Where the testimonial evidence is conflicting and requires an evaluation of demeanor and
credibility of witnesses, the jury is the final judge of the weight of the evidence. See Cain
v. State, 958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997). On appeal we do not disturb the
jury's credibility determinations. Id. A decision is not manifestly unjust merely because the
jury resolved conflicting views of the evidence in favor of the State. Id. at 410. An
appellate court is not to "find" facts, or to substitute its judgment for that of the jury. See
Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). Appellant's contention that
conflicts in the evidence resulted in aggravated perjury ignore established precedent and
are meritless in the context of this record.

 Appellant further responds that the trial court abused its discretion in allowing the
State to impeach him at trial with extraneous offense evidence which appellant alleges was
not disclosed in accordance with the trial court's pre-trial orders. In regard to this
response, appellant once again recognizes that the trial court's decision is reviewed for
abuse of discretion. Appellant does not address that part of the record in which the trial
court afforded him a hearing outside the presence of the jury on the matters he now urges
as arguable error, and ruled against appellant's position. Nor does he address the lack
of evidence of harm, such as (1) any surprise to his counsel by the evidence, or (2) how
his case would have been tried any differently had the extraneous offense evidence been
disclosed earlier. In light of the record, appellant's assertions are meritless and present
no arguable grounds for an appeal. 

 In addition to reviewing the record in connection with the possible issues addressed
by appellant's counsel and the pro se response filed by appellant, we have made an
independent examination of the record to determine whether there are any arguable
grounds meriting appeal. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d
300 (1988); Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991). We have found
no such grounds. We agree that the appeal is frivolous. 

 Accordingly, counsel's Motion to Withdraw is granted. The judgment of the trial
court is affirmed. 


 Phil Johnson

 Chief Justice



Do not publish. 

 



determines whether the evidence links appellant to the
contraband. Trejo, 766 S.W.2d at 385. 

 By his argument, appellant contends the evidence does not link him to the
methamphetamine contained in the black pouch found under the passenger's seat. He
suggests, instead, that his passenger, who law enforcement officers were searching for that
day, was more closely linked to the larger quantity of methamphetamine. 

 Appellant was the owner and driver of the vehicle. Trooper Ashburn testified he
detected an odor of marihuana on appellant, and appellant admitted he had marihuana in
his ashtray and methamphetamine on his person. An undercover narcotics officer testified
that usually marihuana use is associated with methamphetamine and it is common for a
user to be a dealer. The officer also testified that given the manner of packaging, there
was no doubt the methamphetamine in the pouch was for sale. According to Trooper
Ashburn, the quantity of methamphetamine found in the pouch was more than for personal
use, and the scales found in the pouch were an indicator of selling for profit.

 Testimony from a drug analyst confirmed that the amount of methamphetamine
found on appellant was 1.02 grams, and the black pouch contained small plastic bags
weighing 21.87 grams. He also testified that samples from both were consistent with one
another. Trooper Ashburn testified that the syringe taken from the passenger contained
a brown substance, whereas the methamphetamine found on appellant was similar in color
and packaging to the contents of the plastic bags found in the leather pouch. 

 The undercover narcotics officer testified that some of the ingredients used in
cooking methamphetamine include lithium batteries and starter fluid. Following his
testimony, the State requested an opportunity to present testimony from three witnesses
outside the jury's presence that appellant was obtaining precursors for cooking
methamphetamine to support its delivery allegation. Two loss prevention security officers
from Wal-Mart testified they are trained to watch high theft areas and that one such area
is the lithium batteries display. They testified that on two separate occasions appellant was
caught shoplifting lithium batteries. Shortly before the first offense, appellant aroused the
suspicion of one of the officers because his shopping basket contained 12 cans of starter
fluid, plastic tubing, and a package of 50 plastic baggies. The third witness, a police officer,
testified he was called to the scene of the first offense to issue a criminal trespass warning
to appellant.

 Following their testimony, defense counsel objected on the ground that appellant
had not been charged with manufacturing methamphetamine and the testimony might
cause the jury to convict for the wrong reason. He further objected that no testimony was
presented on the size of the plastic baggies contained in appellant's shopping cart. 

 The court ruled the witnesses would be allowed to testify to show knowledge and
intent to deliver and offered to give the jury a limiting instruction. Thereafter, the witnesses
testified before the jury regarding the shoplifting offenses. During cross-examination, the
police officer who issued the criminal trespass warning could not recall what size plastic
baggies appellant purchased.

 The narcotics undercover officer was recalled and testified without objection that
methamphetamine is packaged in small plastic sandwich bags and that most people who
cook methamphetamine are users who sell to support their habit. In his words, cooks,
dealers, and users are "all wrapped up in one."

 Evidence was also presented that appellant was cooperative, did not attempt to flee
or make furtive gestures, did not have large amounts of cash, and the black pouch was in
closer proximity to the passenger. However, the logical force of the evidence presented
by the State, i.e., appellant was the owner and driver of the vehicle, the odor of marihuana
and its connection to methamphetamine, the similarity in color and packaging to the
methamphetamine on appellant's person and in the pouch, the presence of a syringe and
scales, the quantity of the methamphetamine in the pouch, and the shoplifting incidents,
affirmatively linked appellant to possession of methamphetamine contained in the black
pouch and established intent to deliver. Appellant's version of the events without evidence
supporting his hypothesis of innocence does not render the evidence insufficient to support
his conviction. See Sosa v. State, 845 S.W.2d 479, 483 (Tex.App.-Houston [1st Dist.]
1993, pet. ref'd) citing Little v. State, 758 S.W.2d 551, 563 (Tex.Cr.App. 1988), cert.
denied, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). We conclude a rational trier
of fact could have found the elements of the crime beyond a reasonable doubt. Appellant's
sole issue is overruled. 

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice



Do not publish.