Opinion issued January
13, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO.
01-10-00462-CR

———————————

Ecknozzie Okeith Fontenot,
Appellant

V.

The State of Texas,
Appellee



 



 

On Appeal from the 182nd
District Court 

Harris County, Texas



Trial Court Case No.
1245729

 



 

MEMORANDUM
OPINION

          A jury found appellant,
Ecknozzie Okeith Fontenot, guilty of the offense of possession with intent to
deliver cocaine weighing more than four grams and less than 200 grams by
aggregate weight.[1]  After finding true the allegations in two
enhancement paragraphs that appellant had been twice previously convicted of
felony offenses, the jury assessed his punishment at confinement for
thirty-five years.  In two points of
error, appellant contends that the evidence is legally and factually
insufficient to support his conviction.  

          We affirm. 

Background

          Houston Police Department (“HPD”) Officer
R. Massey testified that on December 22, 2009, while conducting “surveillance” on
a house, he “saw a lot of foot traffic” and what appeared to be several
“hand-to-hand transactions” involving narcotics.  That same day he used a confidential informant
to make a “narcotics buy” at the home, and he gave the confidential informant
$20 to buy crack cocaine.  The informant made
“the buy” and gave the purchased substance to Massey, who stated that it tested
positive for cocaine.  After the initial
surveillance, Massey obtained a search warrant for the house, and, later that
evening, a team of police officers executed the warrant.  When the officers arrived at the house,
Massey noticed a group of four to five men gathered on the front porch of the
house next door.  He explained that the
house for which they had a warrant was located on the same “lot” as the house
where the men were standing.  A fence
surrounded both houses, and a driveway ran down the middle of the lot.  As they approached yelling “police, search
warrant,” Massey saw appellant throw down a bag of what he “believed to be
marijuana.”  Massey then instructed a
uniformed officer to “handcuff [appellant] because he threw down the
marijuana.”  

After securing the area, the officers proceeded to execute the warrant by
using a “breaching tool” to break down the front door of the house.  Once inside the house, Officer Massey noted
that the house “was pretty much gutted,” except for a front porch that had been
closed in and turned into a “living quarters.” 
In this area, Massey discovered a bed mat, a television, a rifle, a safe,
and men’s clothing, which he opined would fit appellant.  Massey then pried open the safe, where he
found other narcotics, including crack cocaine. 
After he pried open the safe, another officer gave Massey a key, which
had been obtained from appellant, and Massey determined that the key would open
the safe 

          HPD Officer J. Oliver testified that
on December 22, 2009, he participated in the surveillance of the house and the
execution of the search warrant with Officer Massey.  Oliver saw “heavy foot traffic” at the house
and people engaging in “hand-to-hand transactions,” and he identified appellant
as the person he saw conducting the “hand-to-hand transactions.”  When executing the search warrant, Oliver
“mainly dealt with the primary location” where the transactions had taken place
earlier that day.  Oliver explained that
appellant’s identical twin brother was also at the scene, but Oliver could
differentiate between the two because of their clothing and because appellant’s
brother appeared “a little bit slow.”  

          HPD Officer S. Borak testified that on
December 22, 2009, he assisted in the execution of the search warrant as part
of the “marked uniform presence” team.  He helped detain the people who were outside the
house so that the narcotics team could execute the warrant, and he personally
detained appellant.  Before placing appellant
in a patrol car, Borak performed a “pat-down” search and recovered a key in
appellant’s right front pants pocket. 
After determining that it was not a handcuff key, Borak returned the key
to appellant and placed him in the patrol car. 
Borak’s partner detained appellant’s brother and placed him in the same
patrol car.  Borak explained that his
patrol car is equipped with a “recording device,” which he activated in order
to record any conversation between the brothers in the back of the patrol car.  Borak then shut the door of the car and
walked away for approximately fifteen to twenty minutes.  When he returned to the car, Borak retrieved
the audio recording of appellant and his brother, listened to the recording,
and, having heard mention of a key, retrieved the key from appellant that he
had found on his initial search.  Borak
then gave the key to Officer Massey.  

          Sharmista Patel, a criminalist with
the HPD crime lab, testified that she performed an analysis on the substances
found in the safe.  She determined that
one exhibit contained approximately 12.3 grams of cocaine and another 270.4
grams of marijuana.  

Sufficiency of the
Evidence

In his first point of error, appellant argues that the evidence is
legally insufficient to support his conviction because no rational trier of
fact would have found the essential elements of the offense beyond a reasonable
doubt.  In his second point of error,
appellant argues that the evidence is factually insufficient to support his
conviction because it so weak that the verdict is clearly wrong and manifestly
unjust.  

We review the legal sufficiency of the evidence by
considering all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Our role is that
of a due process safeguard, ensuring only the rationality of the trier of fact’s
finding of the essential elements of the offense beyond a reasonable
doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which she is accused.  Id. 

We now review the factual sufficiency of the evidence under the same
appellate standard of review as that for legal sufficiency.  Ervin v. State,
No. 01-10-00054-CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston [1st Dist.]
November 10, 2010, no pet. h.) (citing Brooks
v. State, 323 S.W.3d 893, 912, 926 (Tex. Crim. App. 2010)).  Under this standard, we are to examine “the
evidence in the light most favorable to the prosecution” and determine whether
“a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.”  Jackson, 442 U.S. at 318–19, 99 S. Ct.
at 2788–89.  Evidence is insufficient
when the “only proper verdict” is acquittal. 
Tibbs v. Florida, 457 U.S. 31,
41–42, 102 S. Ct. 2211, 2218 (1982).  

To
establish the unlawful possession of a controlled substance, the State must
show that a defendant (1) exercised care, custody, control, or management over
the controlled substance, and (2) he knew he possessed a
controlled substance.  Tex. Health & Safety Code Ann. §§ 481.002(38),
481.115
(Vernon 2010); Brown v. State,
911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  The State need not show that a defendant
exercised exclusive control over the controlled substance, but, when a
defendant does not have exclusive control, the State must show additional
affirmative links between the defendant and the contraband.  Cedano v. State,
24 S.W.3d 406, 411 (Tex. App.—Houston [1st Dist.] 2000, no pet.).
 The affirmative links must raise a
reasonable inference that the accused knew of and controlled the contraband.  Dickerson v. State,
866 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).
 Mere presence is insufficient to show
that a person possessed contraband.  Cedano,
24 S.W.3d at 411. 


Texas courts have
identified “many non-exhaustive factors” that may demonstrate a link to
contraband.  Roberson v. State, 80 S.W.3d 730, 735
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).
 These factors include (1) the accused’s
presence when a search is conducted, (2) whether the narcotics were in plain
view, (3) the accused’s proximity to and the accessibility of the narcotics,
(4) whether the accused was under the influence of narcotics when arrested, (5)
whether the accused possessed other contraband or narcotics when arrested, (6)
whether the accused made incriminating statements when arrested, (7) whether
the accused attempted to flee, (8) whether the accused made furtive gestures,
(9) whether there was an odor of contraband or narcotics, (10) whether other
contraband or narcotic paraphernalia was present, (11) whether the accused
owned or had the right to possess the place where the narcotics were found,
(12) whether the place in which the narcotics were found was enclosed, (13)
whether the accused was found with a large amount of cash, and (14) whether the
conduct of the accused indicated a consciousness of guilt.  Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex. Crim.
App. 2006).  These factors constitute “a shorthand way of
expressing what must be proven to establish that [narcotics] were possessed
knowingly.”  Roberson, 80 S.W.3d at 735.
 The number of linking factors present is
not as important as the “logical force they create to prove” that an offense
was committed.  Id.  Other factors we have considered include: (1)
whether there were other persons present at the time of the search, (2) whether
the contraband was found in a closet that contained men’s clothing if the
defendant was male, and (3) whether the amount of contraband was large enough
to indicate the defendant knew of its existence.  Classe v. State,
840 S.W.2d 10, 12 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d);
Ex parte Stowe,
744 S.W.2d 615, 617 (Tex. App.—Houston [1st Dist.] 1987, no pet.).
 Despite this list of factors, there is
no set formula necessitating a finding of an affirmative link, but rather,
affirmative links are established by the totality of the circumstances.  Sosa v. State,
845 S.W.2d 479, 483 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).

Intent to
deliver a controlled substance may be proved by circumstantial evidence,
including evidence that an accused possessed the contraband.  Patterson
v. State, 138 S.W.3d 643, 649 (Tex. App.—Dallas 2004, no pet.); Mack v. State, 859 S.W.2d 526, 528 (Tex.
App.—Houston [1st Dist.] 1993, no pet.) 
Courts have considered several factors in determining such intent,
including the following: (1) the nature of the location at which the accused
was arrested; (2) the quantity of contraband in the accused’s possession; (3)
the manner of packaging; (4) the presence or lack thereof of drug paraphernalia
(for use or sale); (5) the accused’s possession of large amounts of cash; (6)
the accused’s status as a drug user; and (7) evidence of drug transactions.  Moreno
v. State, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet.
ref’d); Gabriel v. State, 842 S.W.2d 328, 331–32 (Tex.
App.—Dallas 1992), aff’d,
900 S.W.2d 721 (Tex. Crim. App. 1995); Williams v. State, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet.
ref’d).  The number of factors present is
not as important as the logical force the factors have in establishing the
elements of the offense. 
Gilbert v. State,
874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).  An oral expression of intent is not required,
and “[i]ntent can be inferred from the acts, words, and conduct of the
accused.”  Patrick v. State,
906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  Expert testimony by experienced law
enforcement officers may be used to establish an accused’s intent to
deliver.  See Mack,
859 S.W.2d at 529. 

In support of his
sufficiency challenge, appellant asserts that there were insufficient
affirmative links to connect him to the cocaine found
inside the house.  Appellant argues that
there is not sufficient evidence to establish his possession with “intent to
deliver” because he “was not arrested in the house containing the cocaine; []
was not found to be in the possession of any cash; the cocaine was in a single
baggie, as opposed to the marijuana, which was in individual baggies for
distribution; and the quantity of cocaine was small[,] 12.3 grams versus at
least 270 grams of marijuana.”  Appellant
asserts that a “sufficient presumption of intent to deliver a controlled
substance is not created by a small amount of drugs” such as those found in the
safe.  See Gaffney v. State, 575 S.W.2d 537, 541 (Tex. Crim. App. 1978).[2]  Appellant further asserts that the “evidence
in this case contains a number of inferences that do not by themselves
constitute proof of guilt.”  

Viewing
all of the evidence in the light most favorable to the prosecution, the jury
was presented with the testimony of several officers engaged in the initial
surveillance of the house, execution of the search warrant, and arrest of
appellant.  Appellant matched the physical
description of the person who officers saw engaging in “hand-to-hand transactions,”
and Officer Oliver identified appellant as the man he saw engaging in these
transactions earlier in the day.  Appellant
was on the same “lot” as the house in which the cocaine was found, and, when
the officers approached, appellant threw down a bag of marijuana, prompting the
officers to detain and search him.  Significantly,
appellant was found in possession of a key to the safe located inside the house,
and a recording of appellant and his brother discussing appellant’s possession
of the key to the safe was presented to the jury.  Inside the safe, the officers found 12.3
grams of cocaine, a firearm, marijuana packaged in small plastic bags, and
other tablets that appeared to be narcotics.  Also, the officers did not find in the house any
drug paraphernalia that would have indicated the narcotics were for personal
use.  The house appeared to have been “gutted,”
and only one small portion was usable.  

Based on
the evidence in the record, a rational fact finder could have found sufficient
affirmative links establishing a connection between appellant and the cocaine
found inside the safe and that appellant possessed the cocaine with intent to
deliver.  Accordingly, we hold that the
evidence is sufficient to support appellant’s conviction.  See Ervin, 2010 WL 4619329, at *2–4.

We overrule appellant’s first and second points of error.  

Conclusion

          We affirm the judgment of the trial
court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala, and
Sharp.

Do not publish.  Tex. R. App. P. 47.2(b).











[1]
          See Tex. Health & Safety
Code Ann. §§ 481.002(5), 481.102(3)(D), 481.112(a), (f) (Vernon 2010). 





[2]
          In Gaffney, the court held that the
possession of more than four ounces of a controlled substance does not create
an “[i]rrebuttable presumption” of an intent to deliver.  Gaffney
v. State, 575 S.W.2d 537, 541 (Tex. Crim. App. 1978).