Opinion issued November 10, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00681-CR 

NO. 01-10-00682-CR

———————————

Lamonte Dewayne Bush, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 185th Judicial District Court 

Harris County, Texas



Trial Court Case Nos. 1127967, 1127968

 



 

MEMORANDUM OPINION

          A
jury found appellant, Lamonte Dewayne Bush, guilty of two separate offenses of possession
with the intent to deliver a controlled substance, namely cocaine weighing more
than four grams but less than two hundred grams[1] and ecstasy weighing more
than four grams but less than four hundred grams,[2] and the trial court
assessed his punishment at confinement for twenty-five years.  In three points of error, appellant contends
that the evidence is legally insufficient to support his convictions.

          We
affirm.

Background

          Houston
Police Department (“HPD”) Officer A. Turner testified that on January 13, 2010,
he began his shift with a plan to coordinate with undercover officers
performing surveillance on a suspected “drug house.”  His partner, HPD Officer A. Bock, searched
and thoroughly cleaned their patrol car at the start of their shift.  Bock drove the patrol car to a position “just
outside the neighborhood” of the “drug house” and waited for undercover
officers, positioned closer to the house, to relay descriptions of cars as they
arrived at and departed from the house. 
Turner and Bock then saw a car, which matched a description provided by
the undercover officers, fail to stop at a stop sign, and they initiated a
traffic stop.

          After
exiting the patrol car, Officer Bock approached the driver, Lisa Williams, and
Officer Turner discretely approached the passenger side of the car.  Although the back windows of the car were
tinted, Turner explained that he could see through the front windows.  As appellant, who was in the passenger seat
of the car, opened the glove compartment to take out the driver’s insurance
information for Williams, Turner saw him “toss . . . a slab of crack” into the
compartment.  Not wanting to alert
appellant, Turner “clicked [his] flashlight off and on” towards Bock to signal
that “something [was] up.”  He then asked
appellant to exit the car and quickly patted appellant down for weapons,
finding $800 in cash.  Turner handcuffed
appellant and sat him in the back of the patrol car.  As Bock was interviewing the driver, Turner
returned to the car, searched the glove compartment, and found a bag containing
2.96 grams of crack cocaine.  Appellant
told Turner that the cocaine belonged to his uncle.

          Officers
Turner and Bock then parked their patrol car in a secured parking lot at the
back of the complex and escorted appellant to the HPD central booking station.  After he removed appellant from the patrol
car, Turner performed a “quick search” of the patrol car to “see if maybe
[appellant] left anything,” but he did not find any narcotics.  He explained that he could not conduct a more
comprehensive search at that time because he had to simultaneously “maintain
control of the suspect.”  

Later, as the officers were getting
ready to “put the patrol shop up for the night,” Bock performed another routine
search of the patrol car.  Bock informed
Turner that, “pushed up under the passenger’s seat” in the back of the patrol
car, he found a tissue wrapped around powder cocaine and fourteen pills of ecstasy.  Turner explained that “street-level users”
generally would not have in their possession three varieties of narcotics in such
quantities or have $800 in cash.  On
cross-examination, Turner admitted that he did not notice appellant “fidgeting”
or acting “out of the ordinary” in the back of the patrol car.  He explained that he did not mention the
“drug house” in his initial offense report because “with the elements of the
offense, we didn’t need the fact that he was leaving a known drug house because
that wasn’t the reason for the stop.”  Turner
also explained that he did not want to “burn the location” and alert any
suspects that the house was under surveillance.

Officer Bock testified that before
beginning his shift with Turner, he performed a routine, “comprehensive search”
and cleaning of the patrol car.  Because
the patrol car was “dirty,” Bock also vacuumed it out.  After positioning themselves outside the
neighborhood of the “drug house,” the officers saw the car in which appellant was
a passenger run a stop sign “between 30 seconds and a minute” after receiving an
undercover officer’s description of the car. 
Bock explained that after Turner arrested appellant, Bock “talked with” the
driver, Williams, “at length,” and she said that “she thought [appellant] was
going to speak with somebody in the house about his vehicle being at a storage
lot.”  After determining that Williams
was unaware of appellant’s possession of the narcotics, Bock let her leave the
scene, and the officers took appellant to the HPD central booking station.

After booking appellant, Turner typed
up an offense report, and Bock performed another routine search of the patrol
car.  He specifically checked under the
back seat because “sometimes suspects are able to discard any narcotics that
they have, and the first obvious thing [they] want to do is get it out of view,
so [the narcotics are] kicked up underneath the seat.”  Underneath the back seat on the passenger
side of the patrol car, Bock found a “balled-up napkin” containing approximately
14 grams of powder cocaine in a “clear, plastic baggy” and 14 pills of ecstasy.  Bock explained that because cocaine users “always
[have] small amounts,” he sought to charge appellant with “possession with
intent to deliver based on the large amount and the packaging” of the narcotics
he found in the patrol car.  On
cross-examination, Bock explained that he did not mention the undercover
officers in his offense report because he “didn’t want to jeopardize” an
ongoing investigation.  He admitted that
he had never “specifically seen [appellant] in possession of” narcotics and did
not process the bags or the napkin containing the narcotics for fingerprints.

Legal Sufficiency

          In three
points of error, appellant argues that the evidence is legally insufficient to
support his convictions for possession with intent to deliver because his
connection to the narcotics found in the patrol car is based on “speculative
theory,” no narcotics were found on his person, and he did not own the car in
which the bag of crack cocaine was found.

          We
review the legal sufficiency of the evidence “by considering all of the
evidence in the light most favorable to the prosecution” to determine whether
any “rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.”  Jackson
v. Virginia, 443
U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979).  Evidence is legally insufficient when the
“only proper verdict” is acquittal.  Tibbs v. Florida, 457 U.S. 31, 41–42,
102 S. Ct. 2211, 2218 (1982).  Our role
is that of a due process safeguard, ensuring only the rationality of the trier
of fact’s finding of the essential elements of the offense beyond a reasonable
doubt.  Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which he is accused.  Id.    

          To establish the
unlawful possession of a controlled substance, the State must show that a
defendant (1) exercised care, custody, control, or management over the
controlled substance and (2) he knew he possessed a controlled substance.  Tex. Health & Safety Code Ann.
§§ 481.002(38), 481.112(a), 481.113(a); Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995).  To prove
possession with intent to deliver,
the State must prove that the defendant (1) exercised care, custody, control,
or management over the controlled substance, (2) intended to deliver the
controlled substance to another, and (3) knew that the substance in his
possession was a controlled substance.  Tex. Health & Safety Code Ann. §
481.002(38) (Vernon Supp. 2008), §§ 481.112(a), 481.113(a); Parker v. State, 192 S.W.3d
801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  

Texas courts have identified “many non-exhaustive factors”
that may demonstrate a link to contraband.  Roberson v. State, 80 S.W.3d
730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  These factors include (1) the defendant’s
presence when a search is conducted, (2) whether the narcotics were in plain
view, (3) the defendant’s proximity to and the accessibility of the narcotics,
(4) whether the defendant was under the influence of narcotics when arrested,
(5) whether the defendant possessed other contraband or narcotics when
arrested, (6) whether the defendant made incriminating statements when
arrested, (7) whether the defendant attempted to flee, (8) whether the defendant
made furtive gestures, (9) whether there was an odor of contraband or
narcotics, (10) whether other contraband or narcotic paraphernalia was present,
(11) whether the defendant owned or had the right to possess the place where
the narcotics were found, (12) whether the place in which the narcotics were
found was enclosed, (13) whether the defendant was found with a large amount of
cash, and (14) whether the conduct of the defendant indicated a consciousness
of guilt.  Evans v. State, 202 S.W.3d
158, 162 & n.12 (Tex. Crim. App. 2006).  These factors constitute “a shorthand way of
expressing what must be proven to establish that [narcotics] were possessed
knowingly.”  Roberson, 80 S.W.3d at
735.  The number of linking factors
present is not as important as the “logical force they create to prove” that an
offense was committed.  Id.  Other factors we have considered include whether
there were other persons present at the time of the search and whether the
amount of contraband was large enough to indicate the defendant knew of its
existence. Classe v. State, 840 S.W.2d 10, 12 (Tex. App.—Houston
[1st Dist.] 1992, pet. ref’d); Ex parte Stowe, 744 S.W.2d
615, 617 (Tex. App.—Houston [1st Dist.] 1987, no pet.).  Despite this list of factors, there is no set
formula necessitating a finding of an affirmative link, but rather, affirmative
links are established by the totality of the circumstances.  Sosa v. State, 845 S.W.2d
479, 483 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).

The State need not show that a defendant exercised exclusive
control over the controlled substance, but, when a defendant does not have
exclusive control, the State must show additional affirmative links between the
defendant and the contraband.  Cedano
v. State,
24 S.W.3d 406, 411 (Tex. App.—Houston [1st Dist.] 2000, no pet.).  The affirmative links must raise a reasonable
inference that the defendant knew of and controlled the contraband.  Dickerson v. State, 866 S.W.2d
696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).  These additional facts may include the
proximity of the defendant to the contraband and its accessibility or
visibility to the defendant.  Id. at 769.  Although the defendant must be affirmatively
linked to the controlled substance, this link need not exclude every other
reasonable theory except his guilt.  Id.

          Intent to
deliver a controlled substance may be established through circumstantial
evidence, including evidence that the defendant possessed the contraband.  Patterson v. State, 138 S.W.3d
643, 649 (Tex. App.—Dallas 2004, no pet.); Mack v. State, 859
S.W.2d 526, 528 (Tex. App.—Houston [1st Dist.] 1993, no pet.).
 Courts have considered several factors
in determining such intent, including the following: (1) the nature of the
location at which the defendant was arrested; (2) the quantity of contraband in
the defendant’s possession; (3) the manner of packaging; (4) the presence or
lack thereof of drug paraphernalia (for use or sale); (5) the defendant’s
possession of large amounts of cash; (6) the defendant’s status as a narcotics
user; and (7) evidence of narcotics transactions.  Williams v. State, 902 S.W.2d
505, 507–08 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d); see also Moreno v. State, 195 S.W.3d
321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d); Gabriel v.
State,
842 S.W.2d 328, 331–32 (Tex. App.—Dallas 1992), aff’d, 900 S.W.2d
721 (Tex. Crim. App. 1995).  The number
of factors present is not as important as the logical force the factors have in
establishing the elements of the offense.  Gilbert v. State, 874 S.W.2d
290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).  An oral expression of intent is not required,
and “[i]ntent can be inferred from the acts, words, and conduct of the
accused.”  Patrick v. State, 906 S.W.2d
481, 487 (Tex. Crim. App. 1995) (en banc).  Expert testimony by experienced law
enforcement officers may be used to establish the defendant’s intent to
deliver.  See Mack, 859 S.W.2d
at 529.

          In his first two points of error, appellant
argues that the evidence is legally insufficient to support his conviction for
possession of the powder cocaine and ecstasy found in the officers’ patrol car
because Officer Turner would have found any narcotics on him when Turner performed
the “pat-down” search of appellant for weapons before placing him in the patrol
car.  Appellant further argues that
because the officers were “worried for their safety” and there were no “factors
that might cause [the] officers to be distracted,” Turner’s weapon search would
have been thorough enough to discover any narcotics.  Appellant notes that no fingerprints were
found on the bags or the napkin containing the narcotics and no personal items
of appellant were found with the narcotics in the patrol car.  As a result, appellant asserts that his
connection to the narcotics in the patrol car is based on “speculative theory.”

          Officer Bock testified that he
thoroughly searched, cleaned, and vacuumed out the patrol car before starting
his shift without finding any narcotics. 
Officer Turner testified that although he patted appellant down for
weapons before detaining him, his “main concern [was] officer[] safety,” and he
wanted to leave the scene “as quickly as possible.”  Both officers testified that appellant was
the only person that they arrested that night, and Bock testified that he found
the narcotics underneath the seat in the patrol car where appellant was placed.  The officers arrested appellant as he was
leaving a suspected “drug house,” and they found him in possession of $800 in
cash.  In a similar case, the Texas Court
of Criminal Appeals held that there was legally sufficient evidence to support
a defendant’s conviction because the evidence showed that no controlled substance was
beneath the back seat of a patrol car before the
defendant was placed in it.  Williams
v. State,
784 S.W.2d 428, 429–30 (Tex. Crim. App. 1990).  

Thus, viewing all of the evidence in the light most
favorable to the prosecution, we conclude that a rational trier of fact could
have inferred that the defendant deposited the controlled substance
beneath the seat.  Id.  Accordingly, we hold
that the evidence is legally sufficient to support appellant’s conviction for
the narcotics found in the patrol car.  See id; Goracki v. State, No. 01-01-00101-CR, 2002
WL 537972, at *2–3 (Tex. App.—Houston [1st Dist.] Apr. 11, 2002) (mem. op.)
(not designated for publication) (holding evidence legally sufficient to link defendant
to narcotics found in patrol car where officer searched car before his shift
and narcotics were found “in close proximity to where appellant was sitting”).  

We overrule appellant’s first two
points of error.

          In his third point of
error, appellant argues that the evidence is legally insufficient to establish
that he possessed the narcotics found in the glove compartment of Williams’ car
because the car did not belong to him and the narcotics were not found on his
person.  He argues that because the
conditions were too dark and the car windows were tinted, Officer Turner could
not have seen him place the narcotics into the glove compartment.  He asserts that Officer Bock was in a better
position to watch him and Bock’s failure to notice appellant place narcotics
into the glove compartment indicates that the narcotics did not belong to him.  

However, Officer Turner testified
that he approached Williams’ car “between the passenger and the driver’s side
door” and the front windows were not heavily tinted.  Officer Bock testified that he was focused on Williams
during the stop.  Standing less than two
feet from appellant, Officer Turner saw appellant toss “a slab of crack” into
the glove compartment, which was illuminated by a light therein.  Furthermore, the evidence revealed that
appellant was leaving a suspected “drug house,” appellant had $800 in cash on his
person, and Williams appeared to have no knowledge of the narcotics.  It is the role of the jury to weigh the
evidence, evaluate the credibility of the witnesses, and draw reasonable
inferences.  Williams, 235 S.W.3d at 750.  

Given this evidence, a reasonable
trier of fact could have concluded that the narcotics found in the glove
compartment belonged to appellant.  See Evans, 202 S.W.3d at 612 & n.12 (listing defendant’s presence, defendant’s
proximity and accessibility to narcotics, presence of other narcotics, and defendant’s
possession of large amount of cash as evidence tending to link defendant to
narcotics).  Accordingly, we hold that
the evidence is legally sufficient to support appellant’s conviction for the
narcotics found in the glove compartment.

          We overrule appellant’s
third point of error.

Conclusion

          We
affirm the judgments of the trial court. 


 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Health & Safety Code Ann.
§§ 481.002(5),
481.102(D), 48.112(a), (d) (Vernon 2010); trial cause number 1127967; appellate
cause number 01-10-00681-CR.

 





[2]           See
id. §§ 481.002(5), 481.103(a)(1), 481.113(a), (d); trial
cause number 1127968; appellate cause number 01-10-00682-CR.